United States Courts
Southern District of Texas
FILED

JUN 0 4 2007

Michael N. Milby, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **RIMKUS CONSULTING GROUP, INC.** | § | |
| | § | |
| **v.** | § | **Civil Action No. 07-1494** |
| | § | |
| **RAULT RESOURCES, INC. AND** | § | |
| **JOSEPH M. RAULT, INDIVIDUALLY** | § | |

---

### PLAINTIFF RIMKUS CONSULTING GROUP, INC.'S RESPONSE TO DEFENDANTS' RULE 56 MOTION TO DISMISS

---

Plaintiff Rimkus Consulting Group, Inc. ("Rimkus"), herein responds to Defendants Rault Resources, Inc. and Joseph M. Rault, Individually's (collectively "Defendants") Fed.R.Civ.P. Rule 56 Motion to Dismiss ("Motion"). The Motion should be denied as Rule 56, which governs summary judgment motions, is an improper method to address personal jurisdiction. Further, Defendants have consented to the jurisdiction of this Court as the Terms & Conditions between the parties contains forum selection clauses that set venue in Harris County, Texas.

### I. Introduction & Statement of Facts

This is a breach of contract dispute over the non-payment of invoices that are due and payable in Harris County, Texas. *See* Plaintiff's First Amended Petition, on file with the Court and incorporated herein. Defendants collectively entered into five separate assignments with Rimkus beginning in September and October, 2005. *See* affidavit of Ralph S. Graham, attached as Exhibit A and incorporated herein. The first assignment between the parties is not at issue as there has been full compliance by the parties with the agreement, including full payment by Defendant Rault Resources. *Id.*

The Plaintiff, Rimkus, is a Texas corporation and has its corporate headquarters and principal place of business located in Harris County, Texas. *See* Exhibit A. Defendant Joseph M. Rault is the President of Defendant Rault Resources, Inc. *See* Exhibit B to the Motion.  Mr. Rault asserts he is a resident of Louisiana and Rault Resources is a New Mexico corporation with a principal place of business in Louisiana. *See* Exhibit's A and B to the Motion.

In September, 2005, Defendant Rault Resources, through Rault Resources' employee Marti Frye, contacted Rimkus to provide a lightning strike evaluation on a property purportedly owned by Rault Resources, located at 400 E. Kaliste Saloom Road, Lafayette, Louisiana. *See* Exhibit A.  On September 21, 2005, Rimkus forwarded to Defendant Rault Resources a Confirmation of Assignment letter with Terms & Conditions. *Id.*  As noted above, this assignment is not at issue as there has been full compliance with the Terms & Conditions. *Id.*

In September, 2005, Defendant Joseph M. Rault contacted Rimkus to provide hurricane storm damage assessments on two properties purportedly owned by him, located at 110 Veterans Memorial Blvd. and 2400 Veterans Memorial Blvd., Metairie, Louisiana. *Id.*  For each of these assignments, Rimkus forwarded to Defendant Rault a Confirmation of Assignment letter with the same Terms & Conditions previously forwarded to Defendant Rault Resources. *Id.*  The letters are dated September 26, 2005, copies of which are attached as Exhibit's A-1 through A-2. *Id.*

In late September, 2005, Marti Frye of Defendant Rault Resources, Inc. again contacted Rimkus to provide a moisture intrusion evaluation on the same property purportedly owned by Rault Resources located at 400 E. Kaliste Saloom Road, Lafayette, Louisiana. *Id.*  On October 3, 2005, Rimkus forwarded to Defendant Rault Resources a Confirmation of Assignment letter with the same Terms & Conditions, a copy of which is attached as Exhibit A-3. *Id.*

In October, 2005, Defendant Rault Resources, Inc., through Defendant Joseph M. Rault, contacted Rimkus to provide a hurricane storm damage assessment on a property purportedly owned by Rault Resources, located at 611 Northline, Metairie, Louisiana. *Id.* On October 19, 2005, Rimkus forwarded to Defendant Rault Resources a Confirmation of Assignment letter with the same Terms & Conditions, a copy of which is attached as Exhibit A-4. *Id.*

All five Confirmation of Assignment letters and Terms & Conditions were sent to the same address, three of which were addressed to Defendant Joseph M. Rault's attention. *See* Exhibit's A; A-1 through A-4. The Terms & Conditions are identical for each assignment and set forth the rights and obligations of the parties and the terms under which services would be provided by Rimkus for each assignment. *Id.* The Terms & Conditions contain identical forum selection clauses mandating all legal actions brought pursuant to the agreements be held in Harris County, Texas. *Id.* The Terms & Conditions also govern the method and place of payment (Houston, Texas) and that Texas law will apply to any proceedings. *Id.*

At no time during the performance of the four assignments (or the fifth assignment that was paid in full) did Defendants object to the Terms & Conditions. *See* Exhibit A. Rather, Defendants continued to use Rimkus' services on each assignment after the Terms & Conditions were delivered. *Id.* As illustrated above, Defendants also continued to enter into additional assignments with Rimkus after delivery of the initial Terms & Conditions on September 21, 2005, containing the identical forum selection clause. *Id.* Each party performed its contractual obligations under the Terms & Conditions, save and except for Defendants failure to make payment to Rimkus for services rendered.[1] *Id.* The Rault Defendants collectively owe Rimkus the principal balance of $128,323.90.

---

[1] The dates of the unpaid invoices range from October 20, 2005 to October 18, 2006.

As a result of the non-payment, Rimkus filed suit in Harris County, Texas state court pursuant to the forum selection clauses. Defendants removed this matter to this Court and now seek dismissal pursuant to Fed.R.Civ.P. 56.

## II.   Argument & Authorities

**A.      Fed.R.Civ.P. Rule 56 is an improper method to determine personal jurisdiction.**

Defendants have only sought relief pursuant to Rule 56 of the Federal Rules of Civil Procedure, which governs summary judgment motions. *See* Motion.  Summary judgment is proper for a defendant if the evidence establishes no genuine issues of material fact and movant's entitlement to judgment as a matter of law on the claims asserted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

The basis of the Motion is Defendants' assertion this Court lacks personal jurisdiction over the Defendants.  Defendants fail to provide any evidence to support any defenses to the merits of the claim, the non-payment of the invoices, or that Rimkus is not entitled to judgment for the sums due. In fact, Defendants admit they owe some amount of money to Rimkus for the services provided. *See* Motion at p. 1, sec. I.  Rimkus submits it is improper for Defendants to seek a ruling on jurisdictional issues under Rule 56.  Regardless, the affidavit of Ralph S. Graham establishes the existence of valid forum selection clauses for each assignment requiring this matter be litigated in a court of competent jurisdiction in Harris County, Texas, which would defeat summary judgment. *See* Exhibit A.

**B.**   **The Terms & Conditions between the parties contain forum selection clauses that mandate venue in Harris County, Texas.**

Additionally, Defendants personal jurisdiction challenge fails as there is an enforceable forum selection clause.  Where a defendant challenges personal jurisdiction, the plaintiff needs only to establish a *prima facie* case supporting personal jurisdiction. *Felch v. Transports Lar-Mex SA De CV*, 92 F.3d 320, 326 (5th Cir. 1996).  Further, the court shall accept as true that party's uncontroverted allegations and resolve all factual conflicts in favor of the party seeking to invoke the court's jurisdiction. *Central Freight Lines, Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

Defendants' assertions they are not residents of Texas and do not have sufficient connections with Texas are of no import.  Personal jurisdiction is a waivable right.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473, n. 14 (1985).  The Terms & Conditions between the parties contain valid forum selection clauses mandating Texas courts, specifically in Harris County, Texas, have jurisdiction of disputes arising from the same. *See* Exhibit's A-1 through A-4.  Thus, Defendants either consented to personal jurisdiction or waived the requirements for personal jurisdiction in a Texas forum. *Burger King Corp.*, 471 U.S. at 473, n. 14; *see also American Airlines v. Rogerson ATS*, 952 F.Supp. 377, 381 (N.D. Tex. 1996)(finding that the party to a contract containing such a clause consented to jurisdiction and venue in the forum enumerated in the clause).

The forum selection clauses in the Terms & Conditions are identical for all four assignments and provide the following:

"Venue for any legal action brought pursuant to this contract shall be in **Harris County, Texas**.  Texas law will apply to any such proceeding." [emphasis added].

"Where the agreement contains clear language showing that jurisdiction is appropriate only

in a designated forum, the clause is mandatory." *Von Graffenreid v. Craig*, 246 F.Supp.2d 553, 560 (N.D. Tex. 2003) (citing *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997)); *First Nat'l of N. Am., LLC v. Peavy*, No. 3-02-CV-0033-R, 2002 WL 449582, at *1 (N.D. Tex. Mar. 21, 2002). *See also International Software Sys., Inc. v. Amplicon*, 77 F.3d 112, 114-15 (5th Cir. 1996) (explaining that such clauses "are *prima facie* valid" and "should be enforced").

There is no ambiguity in the interpretation of the language of the choice of forum provision contained in the Terms & Conditions. The Terms & Conditions specify that any legal action brought pursuant to the contract *shall* be adjudicated in Harris County, Texas. *See* Exhibit's A-1 through A-4. The language of the forum selection clause does not make Harris County an optional choice. Jurisdiction of this Court over Defendants therefore is proper. *See Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13 (5th Cir. 1995).

Enforcement of forum selection clauses is mandatory unless the party opposing enforcement clearly shows that enforcement would be unreasonable and unjust, or that the clause was invalid for reasons such as fraud or overreaching. See *Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9, S.Ct. 1907, 1913 (1972); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 588 111 S.Ct. 1522, 1525 (1991); see also *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 793 (Tex.2005); *In re Automated Collection Techs., Inc.*, 156 S.W.3d 557, 559 (Tex.2004); *In re AIU Ins. Co.*, 148 S.W.3d 109, 113-14 (Tex.2004)(quoting *Bremen* and *Carnival Cruise Lines* tests).

A forum selection clause may be unreasonable if enforcement would be so gravely difficult and inconvenient that for all practical purposes the party resisting enforcement would be deprived of his day in court or enforcement would contravene a strong public policy of the forum in which the suit is brought, whether declared by statute or by judicial decision. *Bremen*, 407 U.S. at 15-18.

The opponent of the forum selection clause bears a heavy burden of proof in order to set it aside. *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir.1997); *In re AIU*, 148 S.W.3d at 113-14.

Defendants have not provided any evidence to carry their heavy burden to show enforcement of the forum selection clause was the product of fraud or overreaching or would be gravely difficult and inconvenient that for all practical purposes Defendants would be deprived of their day in court or enforcement would contravene a strong public policy of the forum. Rather, Defendants make conclusory statements that such terms were not negotiated.

However, even in a non-negotiated contract, a forum selection clause is valid as long as it is not fundamentally unfair. *Carnival Cruise Lines*, 499 U.S. at 594. The inquiry into fundamental unfairness involves the examination of such factors as: (1) whether the forum was selected to discourage legitimate claims; (2) whether the consent to the forum selection clause was obtained by fraud or overreaching; (3) whether the party resisting enforcement had adequate notice of the forum selection clause; and (4) whether the party retained the option of rejecting the contract with impunity following notice of the forum selection clause. *Id.*; see also *Stobaugh v. Norwegian Cruise Line, Ltd.*, 5 S.W.3d 232, 235 (Tex.App.-Houston [1st Dist.] 1999, writ denied), *cert. denied*, 531 U.S. 820, 121 S.Ct. 62 (2000).

There is no evidence provided by Defendants to satisfy the *Carnival Cruise Lines / Stobaugh* factors. Rather, the evidence shows on five separate occasions Defendants were provided notice of the forum selection clause for Harris County, Texas, Defendants never objected to the terms, Defendants accepted the terms by the continued use of Rimkus on all assignments and Defendants continued to enter into additional assignments with Rimkus after delivery of the initial Terms & Conditions containing the forum selection clause. It is well established that a contract containing

mutual obligations that has been reduced to writing and signed by one of the parties can be accepted by the non-signing party by their conduct, thus making it a binding agreement on both parties. *MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*, 179 S.W.3d 51, 61 (Tex.App.-San Antonio 2005, writ denied); *Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co.*, 849 S.W.2d 380, 392 (Tex.App.-Houston [14th Dist.] 1993, writ denied); *Velasquez v. Schuehle,* 562 S.W.2d 1, 3 (Tex.Civ.App.-San Antonio 1977, no writ).

Further, there is nothing in the terms that would penalize Defendants for immediately rejecting the clause after receipt of the same.  The forum selection clause is also reasonable and necessary as Rimkus has 28 offices in 15 states and two foreign countries (Spain and Kuwait), employees do not necessarily perform the professional services in the same state where the assignment is located and at times multiple employees from separate offices in different states may be assigned to a project.  Without a forum selection clause between Rimkus and its clients, the company would be exposed to having to litigate contractual matters in multiple forums which would increase the cost of doing business and the hourly rates to be charged to clients, which would negatively impact the company.[2]

Defendants' claim that in all dealings with Rimkus Mr. Rault was acting in his capacity as President of Rault Resources, not individually, and that at all times Defendants understood Rimkus was a local Louisiana firm, employing local Louisiana people. *See* Exhibit's A, par.6 and B, par. 8

---

[2] The pending Mississippi and Louisiana lawsuits identified by Defendants on p. 2, fn 2 of the Motion are claims asserted by third parties that have no contractual relationship with Rimkus, so a forum selection clause is inapplicable. Further, it should be noted Defendants have made misleading statements about the cases as Rimkus was not a party to the *Weiss* case and the plaintiffs' expert in *Weiss* testified there was nothing improper with the engineer of record not conducting an on-site inspection before issuing a report.  For the remaining cases, there have not been any rulings on the merits of the claims and the allegations are being vigorously defended.

to the Motion.  These are inaccurate and misleading statements. Attached as Exhibit B is a June 23,

2006 letter from Mr. Rault to Rimkus regarding the assignment reflected in Exhibit A-4.  First, the

letter is issued in Mr. Rault's individual capacity and there is nothing in the letter reflecting it is

made on behalf of Rault Resources.  Next, the letter is mailed to Rimkus in Houston, Texas and was

received by Rimkus in Houston, Texas. *See* Exhibit A.  Attached as Exhibit C is a true and correct

copy of the check from Rault Resources for the services provided by Rimkus on the first assignment.

*See* Exhibit C.  The check is addressed and delivered to Rimkus in Houston, Texas, where the Terms

& Conditions require payment to be made, and appears to be signed by Mr. Rault. *Id.*  These exhibits

directly contradict the statements in the affidavits that are being offered to have this case dismissed.

Thus, the Court should enforce the forum selection clause and deny Defendants' Motion.

**C.      Exercising personal jurisdiction over the Defendants would not offend traditional notions of fair play and substantial justice.**

Jurisdiction over Defendants by a Texas court comports with the traditional notions of fair

play and substantial justice. *International Shoe Co. v. State of Washington,* 326 U.S. 310, 316

(1945).  Jurisdiction by consent satisfies the requirements of due process. *American Airlines, Inc.,*

952 F.Supp. at 381, n.5.  "In fact, failure to enforce the forum-selection clause would be unfair and

unjust to [the defendant]." *Id.*  Additionally, Texas has a significant interest in redressing injuries

that occur within its borders at the hands of nonresidents. *WNS, Inc. v. Farrow,* 884 F.2d 200, 204

(5th Cir. 1989).  Further, conducting litigation in this Court is not so gravely difficult and

inconvenient to Defendants that they would be at a severe disadvantage in comparison to Rimkus.

*See Burger King Corp.,* 471 U.S. at 478.

Regardless of any argument Defendants may assert, however, the forum selection clause, as

with the jurisdictional issue, is *prima facie* valid and should be enforced in the absence of any evidence of unenforceability. *American Airlines*, 952 F.Supp. at 381. Joseph M. Rault has made no challenge to the forum selection clause in his individual capacity. Rault Resources has offered no evidence that it did not receive the Terms & Conditions or it objected to the same. Rather, the evidence shows Defendants continued to use the services of Rimkus on each assignment after delivery of the Terms & Conditions and also continued to contact Rimkus for additional assignments. Merely making conclusory statements that it did not agree to the clauses does not overcome Defendants heavy burden to set aside the same. The clauses are consequently valid and establish that venue is proper in this district.

Further, there is nothing offered in the two affidavits to support the argument that traditional notions of fair play and substantial justice would be offended by keeping the case in this Court. Fair play and substantial justice would not be offended. Texas law will apply to these proceedings. *See* Exhibit's A-1 through A-4. The only burden on Defendants is traveling to Houston from Lafayette, Louisiana for court appearances. At a distance of only approximately 219 miles, the burden is minimal. Maintaining suit in this Court would provide an efficient resolution of the controversy. Rimkus' accounting department is located in Harris County, Texas. *See* Exhibit A. All of Rimkus' accounting records, correspondence and project documents for these assignments are located in Harris County, Texas. *Id.* The invoices in this suit were generated and handled through this office. *Id.* Defendants have claimed that the invoices bearing the name Rimkus Consulting Group, Inc. of Louisiana establish this case should be dismissed. This is a red herring. Rimkus Consulting Group, Inc. of Louisiana is a wholly owned subsidiary of Rimkus and is also a Texas corporation with its corporate headquarters and principal place of business in Houston, Harris County, Texas. *Id.* Further,

the Confirmation of Assignment letter and Terms & Conditions identify Rimkus as the party

contracting with Defendants and the invoices were issued after the Terms & Conditions were

delivered to Defendants. *See* Exhibit's A-1 through A-4; Plaintiff's First Amended Petition.

Defendant Rault even corresponded with the Houston office of Rimkus and did not identify Rimkus

as a Louisiana entity. *See* Exhibit B.

Next, Ralph S. Graham is the primary witness to establish Plaintiff's case and he is located

in Harris County, Texas. *See* Exhibit A. Mr. Graham is the Senior Vice President of Rimkus,

oversees all litigation and collection matters for the company and has personal knowledge of the

dispute. *Id.* Further, Rimkus accounting employees that have been involved in the collection of this

account and have knowledge of relevant facts are located in Harris County, Texas. *Id.* Defendants

have not offered any evidence to establish exercising personal jurisdiction would offend traditional

notions of fair play and substantial justice.

**D.     Venue is proper in Harris County, Texas at the Terms & Conditions between the parties expressly states payment for services is to be made in Harris County, Texas.**

Venue should also remain in Harris County, Texas pursuant to TEX.CIV.PRAC. & REM.C.

§15.035(a), entitled 'Contract in Writing', which states: "... if a person has contracted in writing to

perform an obligation in a particular county, expressly naming that county ..., suit on or by reason

of the obligation may be brought against him .. in that county ...".

In *Geodynamics Oil and Gas, Inc. v. U.S. Silver & Mining Corp.*, 358 F.Supp 1345, 1348

(S.D.Tex.1973), the defendant moved to dismiss for lack of personal jurisdiction. A forum selection

clause was not at issue but after analyzing the minimum contacts with the forum, the Court also

construed the predecessor statute to TEX.CIV.PRAC. & REM.C. §15.035(a) and found this statute was

a stronger reason to fix venue in the Southern District of Texas than the number of activities the defendant had with the forum.

The agreement between the parties requires performance in Harris County, Texas in that "[p]ayment shall be made in U.S. dollars in Houston, Texas." *See* Exhibit's A-1 through A-4.

In order to constitute a 'Contract in Writing', it is not necessary that the agreement be signed by both parties; one may sign and the other may accept by his acts, conduct or acquiescence in the terms of the agreement. *Trans-South Hydrocarbons Co. v. Trinity Industries, Inc.*, 419 S.W.2d 662, 664 (Tex.Civ.App.-Dallas 1967, no writ); *Public Service Life Ins. Co. v. Copus*, 494 S.W.2d 200, 203 (Tex.Civ.App.-Tyler 1973, no writ).

A contract expressly agreeing to pay money at a certain place, lays the venue of the action in that place. *Trafalgar House Oil & Gas Inc. v. De Hinojosa*, 773 S.W.2d 797, 798 (Tex.App.-San Antonio 1989, no writ)(county designated in oil and gas lease as place for payments to lessor was appropriate venue for action alleging damages for breach of lease); *Christian v. Universal Credit Co.*, 63 S.W.2d 229, 229-30 (Tex.Civ.App.-Dallas 1933, writ dism'd)(written sale contract obligating buyer to make stipulated payments at plaintiff's office in Dallas County established case lawfully maintainable in Dallas County against buyer).

As stated above, the basis of this suit is Defendants failure to make payment for the professional services rendered by Rimkus. *See* Exhibit A. Payment is to be made in Houston, Texas pursuant to the Terms & Conditions and invoices issued. *See* Exhibit's A-1 through A-4. The invoices at issue in this suit were generated and mailed from Harris County, Texas and contain a Houston address for Rimkus. *See* Exhibit A; Plaintiff's First Amended Petition. Defendant Rault corresponded with Rimkus' Houston office regarding one of the unpaid invoices, which shows an

acknowledgment of the location of performance. *See* Exhibit B. Further, Rault Resources made

payment in Houston, Texas for the first assignment between the parties. *See* Exhibit C.

Thus, the jurisdictional challenge should be overruled and venue should be maintained with

this Court.

### III.  CONCLUSION AND PRAYER

Rimkus Consulting Group, Inc., has made out a *prima facie* case for the conferral of

jurisdiction by this Court on Defendants.  The forum selection clauses establish jurisdiction by a

Texas court.  The forum selection clauses additionally fix venue upon this District, which is not

negated by any considerations in the interest of justice.  Accordingly, Rimkus Consulting Group,

Inc., prays that the Defendants' Motion to Dismiss be denied and for all such other relief to which

it is entitled.

Respectfully submitted,

DAVID A. WARD, JR.
Texas State Bar No. 0785177

Of Counsel:
The Ward Law Firm
10003 Woodloch Forest Drive, Suite 100
The Woodlands, Texas 77382
Tel:  (281) 362-7728
Fax:  (281) 362-7743
Email: ward@dwardlaw.com
**ATTORNEYS FOR PLAINTIFF**
**Rimkus Consulting Group, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was forwarded via

United States Mail, first class postage paid or by facsimile to all known counsel of record on this

the 4th of June, 2007:

Suzanne M. Risey
Miles P. Clements
Michelle C. Purchner
FRILOT PARTRIDGE, LC
3600 Energy Centre
1100 Poydras Street
New Orleans, LA 70163
FACSIMILE: 504-599-8264

David A. Ward, Jr.

# TABLE OF AUTHORITIES

*American Airlines v. Rogerson ATS*, 952 F.Supp. 377 (N.D. Tex. 1996) . . . . . . . . . . . . 5, 9, 10

*Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, S.Ct. 1907 (1972) . . . . . . . . . . . . . . . . . . . . . . . . 6

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 111 S.Ct. 1522 (1991) . . . . . . . . . . . . . . 6, 7

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986) . . . . . . . . . . . . . . . . . . . . . . . . 4

*Central Freight Lines, Inc. v. APA Transport Corp.*, 322 F.3d 376 (5th Cir. 2003) . . . . . . . . . . 5

*Christian v. Universal Credit Co.*, 63 S.W.2d 229
(Tex.Civ.App.-Dallas 1933, writ dism'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318 (10th Cir. 1997) . . . . . . . . . . . . . . . 6

*Felch v. Transports Lar-Mex SA De CV*, 92 F.3d 320 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . 5

*First Nat'l of N. Am., LLC v. Peavy*, No. 3-02-CV-0033-R,
2002 WL 449582 (N.D. Tex. Mar. 21, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Geodynamics Oil and Gas, Inc. v. U.S. Silver & Mining Corp.*,
358 F.Supp 1345 (S.D.Tex.1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Haynsworth v. The Corp.*, 121 F.3d 956 (5th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co.*, 849 S.W.2d 380
(Tex.App.-Houston [14th Dist.] 1993, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re AIU Ins. Co.*, 148 S.W.3d 109 (Tex.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*In re Automated Collection Techs., Inc.*, 156 S.W.3d 557 (Tex.2004) . . . . . . . . . . . . . . . . . . . . 6

*International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945) . . . . . . . . . . . . . . . . . . . . . 9

*International Software Sys., Inc. v. Amplicon*, 77 F.3d 112 (5th Cir. 1996) . . . . . . . . . . . . . . . . . 6

*Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . 6

*MG Bldg. Materials, Ltd. v. Moses Lopez Custom Homes, Inc.*,
179 S.W.3d 51 (Tex.App.-San Antonio 2005, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex.2005) . . . . . . . . . . . . . . . 6

*Public Service Life Ins. Co. v. Copus*, 494 S.W.2d 200
(Tex.Civ.App.-Tyler 1973, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Stobaugh v. Norwegian Cruise Line, Ltd.*, 5 S.W.3d 232 (Tex.App.-Houston
[1st Dist.] 1999, writ denied), *cert. denied*, 531 U.S. 820, 121 S.Ct. 62 (2000) . . . . . . . . . . . . . 7

*Trafalgar House Oil & Gas Inc. v. De Hinojosa*, 773 S.W.2d 797
(Tex.App.-San Antonio 1989, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Trans-South Hydrocarbons Co. v. Trinity Industries, Inc.*, 419 S.W.2d 662
(Tex.Civ.App.-Dallas 1967, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Velasquez v. Schuehle*, 562 S.W.2d 1 (Tex.Civ.App.-San Antonio 1977, no writ) . . . . . . . . . . . 8

*Von Graffenreid v. Craig*, 246 F.Supp.2d 553 (N.D. Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 6

*WNS, Inc. v. Farrow*, 884 F.2d 200 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed.R.Civ.P. Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

TEX.CIV.PRAC. & REM.C. §15.035(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **RIMKUS CONSULTING GROUP, INC.** | § | |
| | § | |
| **v.** | § | **Civil Action No. 07-1494** |
| | § | |
| **RAULT RESOURCES, INC. AND** | § | |
| **JOSEPH M. RAULT, INDIVIDUALLY** | § | |

### <u>AFFIDAVIT</u>

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, personally appeared RALPH S. GRAHAM, who being by me duly sworn, states on his oath as follows:

My name is Ralph S. Graham. I am a Senior Vice President for Rimkus Consulting Group, Inc. ("Rimkus"), a Texas corporation, and I am fully qualified and authorized to make this Affidavit. I have personal knowledge of the facts stated herein and they are true and correct.

Rimkus is a forensic engineering firm that provides various public, private, and individual clients with a wide range of services, including catastrophic storm damage assessments, construction defect and property loss analysis, fire cause and origin investigations, industrial loss evaluations, vehicle accident reconstruction, and business interruption claims review. As noted above, Rimkus is a Texas corporation and its principal place of business and corporate headquarters is located in Houston, Harris County, Texas. Rimkus Consulting Group, Inc. of Louisiana is a wholly owned subsidiary of Rimkus and is also a Texas corporation with its corporate headquarters and principal place of business in Houston, Harris County, Texas

The subject of this lawsuit involves four Rimkus job assignments with Defendants Joseph M. Rault and Rault Resources, Inc., although Defendants collectively entered into five assignments with Rimkus during the months of September and October, 2005. When Rimkus is contacted for a new job assignment to provide the services identified above, Rimkus forwards to the client a confirmation letter with the current Terms & Conditions, which are generated and maintained in the Houston office. The Terms & Conditions set forth the terms under which services will be provided and professional fees that will be charged. The Terms &

-1-



Conditions also govern the method and place of payment (Houston, Texas) and contain a forum selection clause for Harris County, Texas.

In September, 2005, Defendant Rault Resources, Inc., through Rault Resources' employee Marti Frye, contacted Rimkus to provide a lightning strike evaluation on a property purportedly owned by Rault Resources, located at 400 E. Kaliste Saloom Road, Lafayette, Louisiana. Rimkus assigned job number 79271 for this project. In accordance with our policies, Terms & Conditions were forwarded to Rault Resources on September 21, 2005 with a confirmation of assignment letter. This assignment is not at issue in this lawsuit as there has been full compliance by the parties with the agreement, including full payment by Defendant Rault Resources for the services rendered by Rimkus.

In September, 2005, Defendant Joseph M. Rault contacted Rimkus to provide hurricane storm damage assessments on two properties purportedly owned by him, located at 110 Veterans Memorial Blvd. and 2400 Veterans Memorial Blvd., Metairie, Louisiana. Rimkus assigned job number's 79279 and 79280, respectively, for the projects. In accordance with our policies, on September 26, 2005, Terms & Conditions were forwarded to Joseph Rault for each assignment with confirmation of assignment letters. A true and correct copy of the Terms & Conditions and confirmation letters that were forwarded to Joseph Rault are attached to my affidavit as Exhibit's A-1 through A-2. These are the same Terms & Conditions previously forwarded to Defendant Rault Resources.

In late September, 2005, Marti Frye of Defendant Rault Resources, Inc. again contacted Rimkus to provide a moisture intrusion evaluation on the same property purportedly owned by Rault Resources located at 400 E. Kaliste Saloom Road, Lafayette, Louisiana. Rimkus assigned job number 792342 for this project. In accordance with our policies, Terms & Conditions were forwarded to Rault Resources on October 3, 2005 with a confirmation of assignment letter. A true and correct copy of the Terms & Conditions and confirmation letter that was forwarded to Rault Resources is attached to my affidavit as Exhibit A-3. These are the same Terms & Conditions previously forwarded to Defendants.

In October, 2005, Defendant Rault Resources, Inc., through Defendant Joseph M. Rault, contacted Rimkus to provide a hurricane storm damage assessment on a property purportedly owned by Rault Resources, located at 611 Northline, Metairie, Louisiana. Rimkus assigned job number 79557 for this project. In accordance with our policies, Terms & Conditions were forwarded to Rault Resources on October 19, 2005 with a confirmation of assignment letter. A true and correct copy of the Terms

& Conditions and confirmation letter that was forwarded to Rault Resources is attached to my affidavit as Exhibit A-4. These are the same Terms & Conditions previously forwarded to Defendants.

The Terms & Conditions contain a venue and choice of law provision which states the following:

> "Venue for any legal action brought pursuant to this contract shall be in Harris County, Texas. Texas law will apply to any such proceeding."

At no time has Defendant Joseph M. Rault or Rault Resources, Inc. objected to the Terms & Conditions that were forwarded on five separate occasions. Rather, Defendants used Rimkus' services after the Terms & Conditions were sent. Defendants also continued to enter into additional assignments with Rimkus after delivery of the initial Terms & Conditions on September 21, 2005, containing the identical forum selection clause. Each party performed its contractual obligations pursuant to the Terms & Conditions, save and except for Defendants failure to make full payment to Rimkus for services rendered. The Rault Defendants collectively owe Rimkus the principal balance of $128,323.90. Further, the Confirmation of Assignment letter and Terms & Conditions identify Rimkus Consulting Group, Inc. as the party contracting with Defendants. The originals of the Confirmation of Assignment letters attached as Exhibit's A-1 through A-4 were signed on behalf of Rimkus.

The Terms & Conditions also require part performance by Defendants in Harris County, Texas. Specifically, the agreements state the following:

> "Payment shall be made in U.S. dollars in Houston, Texas."

In accordance with the Terms & Conditions, invoices were sent for the services provided on all assignments. All invoices are generated and sent from the Houston office and contain the Houston address. True and correct copies of the invoices at issue are attached to Plaintiff's First Amended Petition and incorporated herein.

Although Defendants have paid in full for the first assignment between the parties, Defendants have failed to pay the remaining balance on the four remaining job assignments, as required under the Terms & Conditions. As a result of the non-payment, Rimkus filed suit in Harris County, Texas, pursuant in part to the venue provision in the Terms & Conditions.

The forum selection clause in the Terms & Conditions is necessary as Rimkus has 28 offices in 15 states and two foreign countries (Spain and Kuwait), employees do not necessarily perform the professional services in the same state as the assignment is located and at times multiple employees from separate offices in different states may be assigned to a project. Without a forum selection clause between Rimkus and its clients, the company would be exposed to having to litigate contractual matters in multiple forums which would increase the cost of doing business and the hourly rates to be charged to clients, which would negatively impact the company.

It is within my capacity as Senior Vice President for Rimkus to oversee the handling of litigation for Rimkus, including litigation involving unpaid invoices. I am a resident of Harris County, Texas and am a material witness for this litigation with personal knowledge of the facts of this suit in that I will be the primary witness to prove the unpaid invoices and address any disputes by Defendants for non-payment.

All of the accounting records, correspondence and project documents for these assignments are located in Houston, Harris County, Texas. The central dispute of this lawsuit is unpaid invoices, which are due and payable in Harris County, Texas. Further, Rimkus accounting employees that have been involved in the collection of this account and have knowledge of relevant facts are located in Harris County, Texas. For example, Mr. Jerry Johnson, the Chief Financial Officer who oversees all accounting issues for the company, has knowledge of relevant facts of this account as he assisted me with the matter. Mr. Johnson is a Harris County resident.

I am the custodian of the records for Rimkus Consulting Group, Inc.. Attached hereto as Exhibit's B and C are 2 pages of records from Rimkus Consulting Group, Inc. These said 2 pages of records are kept by Rimkus Consulting Group, Inc. in the regular course of business, and it was the regular course of business of Rimkus Consulting Group, Inc. for an employee or representative of Rimkus Consulting Group, Inc., with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original. Exhibit B is a June 23, 2006 letter from Mr. Rault to Rimkus regarding job assignment 79557. Rault Resources is the client for assignment 79557. However, the June 23, 2006 letter is from Mr. Rault in his individual capacity and does not reflect it is being sent on behalf of Rault Resources. Next, the letter is addressed to Rimkus in Houston, Texas and was received by Rimkus in Houston, Texas. Exhibit C is a true and correct copy of the

-4-

check from Rault Resources for the services provided by Rimkus on the first
assignment.  The check is addressed to Rimkus in Houston, Texas and was
delivered to Rimkus in Houston, Texas, where the Terms & Conditions require
payment to be made.  The check also appears to be signed by Mr. Rault.
"Further, affiant sayeth not."

RALPH S. GRAHAM

SWORN AND SUBSCRIBED TO BEFORE ME by RALPH S. GRAHAM,  this the
4TH day of _JUNE_____ 2007.

KAREN C. NAGY
MY COMMISSION EXPIRES
August 29, 2007

Notary Public in and for
The State of Texas

-5-



**Rimkus Consulting Group, Inc.**
**200 S. Audubon Blvd., Suite B**
**Lafayette, Louisiana  70503**
**(337) 237-1511 Telephone**
**(337) 593-0828 Facsimile**

September 26, 2005

Mr. Joseph Rault
400 E. Kaliste Saloom Rd., Suite 3200
Lafayette, LA  70508

           Re:  110 Veterans Memorial Blvd.
      Subject:  Confirmation of Assignment
RCG File No:  79279

Dear Mr. Rault:

Thank you for selecting Rimkus Consulting Group, Inc. for this assignment.  We have commenced work on this project in accordance with your instructions.  I will coordinate your file throughout the duration of the project, and the professional assigned to manage this project is Nick G. Cammarata, who is classified as a Regional Property Manager.

Unless stated in writing otherwise, our services are limited to providing professional advice, judgments and/or opinions for the exclusive use of our client.

Our terms for providing these services are described in the attached Terms and Conditions.  The Professional Fees Schedule is effective through December 31, 2005.  During the data gathering and analysis phase of this project, our composite hourly charge will be $175.00.  Should this project extend to litigation, the rates for our services will be adjusted to those in the Professional Fees Schedule.

As an addendum to our Terms and Conditions instead of charging directly for the expenses included by our CAT Team we will charge a flat fee of $50.00 an hour to cover these expenses. This $50.00 an hour will cover the following expense items:

| | |
|---|---|
| Hotel | Photographs |
| Car Rental and Fuel | Copies |
| Air Travel/Travel Expenses | Mileage to and from site |
|   to and from Florida | |
| Meals | Faxes |
| Equipment for site work | Phone Service |
| Secretarial Time | E-mail Service |
| Office Supplies | |

This $50.00 an hour does not include the use of highly specialized equipment such as thermal imaging cameras, ground penetrating radar or electrical resistivity equipment, etc.



**EXHIBIT**
A-1



**We will invoice you each month for services provided and expenses incurred during the preceding month. Invoices are due upon receipt. Interest on unpaid balances more than sixty days old will be charged at the rate of one percent per month.**

We appreciate the opportunity to work with you on this assignment and look forward to being of assistance on this and future projects.

Sincerely

RIMKUS CONSULTING GROUP, INC.

*fill copy*

Gary L. Bell
Vice President, Central Region


Enclosure – T&C (Rev. 1/1/05)

# RIMKUS CONSULTING GROUP, INC.

## TERMS AND CONDITIONS
### Effective January 1, 2005

To ensure that the services provided to our Client ("Client") by Rimkus Consulting Group, Inc. ("Company") can be performed in a responsive manner, we have developed broad overall guidelines which will assist in the orderly performance of our work on a sound business basis. In particular, these guidelines are established to clarify steps to be taken in the event our assignment may involve legal matters or the judicial process, or in cases where multiple Clients are represented by the Company on the same assignment.  Unless stated in writing otherwise, our services are limited to providing professional advice, judgments and/or opinions for the exclusive use of our client.

Company will endeavor to provide Client with the appropriate consultants and service at the time of acceptance of each assignment. *Company will proceed diligently with the assignment and will perform work in accordance with generally accepted professional practices in a timely manner.  Company makes no warranties, express or implied, regarding the outcome of any investigation.  Company makes no guarantees or warranties and assumes no obligations except those expressly stated herein.*

There shall be no third party beneficiaries to this Agreement.

Work under the Agreement may be terminated by client, or by Company for just cause.  This includes, but is not limited to development of a material conflict of interest, judicially required participation in onerous discovery or other legal process outside the intended scope of the work, the presence of circumstances beyond the control of Company such as natural disasters or government intervention or failure of Client to pay amounts due Company in a timely manner.

Our files and reports are developed for our Client's use.  We will treat all information, conclusions and results of our investigation as privileged and confidential.  Company will release information to others only upon Client's specific instructions or court order. Company will promptly notify Client of any ordered production.

## CHARGES FOR SERVICES

Professional services are provided on a time and expense basis.  Client may request an estimate of time or cost required for a project, but unless expressly agreed to the contrary, estimates are for budgeting purposes, not a fixed price quotation.

All time expended for the assignment will be billed, including but not limited to investigations, travel, Client meetings, calculations, review of standards, specifications and drawings, preparation of reports, preparation for testimony, court waiting time and/or standby time requested by Client.

We will use our best efforts to minimize travel costs on domestic and international trips associated with project work.  Subject to availability, on flights under five hours in duration, we will utilize economy class.  For flights in excess of five hours, we will fly business class, *if available, or first class, if not available.*

We will invoice you each month for services provided and expenses incurred during the preceding month.  Invoices are due upon receipt.  Interest on unpaid balances more than sixty days old will be charged at the rate of one percent per month.  Payment shall be made in U. S. dollars in Houston, Texas. Payments from foreign countries must be made by wire transfer in U.S. dollars as directed by Company.  *Company may withhold delivery of reports or data, either written or oral, and may suspend the performance of any further service obligations to the Client pending the payment of all invoices.  If client does not pay Company, through no fault of the Company, within the time payment should have been made pursuant to these Terms and Conditions, the Company may, without prejudice to any other available remedy, suspend or delay shipment, delivery and/or performance of any work for client until payment of the entire amount owing is received by Company.*

In order to protect the interests of the Client and avoid possible impeachment of testimony, Company personnel are not required to appear for depositions, trials, or hearings pertaining to an assignment, unless all previous billings on this assignment have been fully paid.  Company may request advance payments for the estimated time charges and expenses in connection with scheduled testimony appearances.

In any litigation involving Client, or Client and Company, in which Company is required or compelled by subpoena or judicial order to testify at a deposition or trial, or to produce documents regarding work performed by Company for Client, the Client agrees to *compensate Company for all time spent and expenses incurred, including time spent in preparing for such testimony and reasonable attorneys fees and expenses incurred in connection with the foregoing.*  Company will give prompt notice to Client to allow the Client to object to any such testimony or production of documents.

## EXECUTION AND SCOPE OF WORK

Client assumes full and complete responsibility for all uses of the work, report and recommendations developed under the assignment.

Company's policy is to maintain a complete file on each assignment for a period of two years from its inception.  Thereafter, the complete file will be maintained only on written instructions to do so and payment of a storage fee.  When requested, we will take possession of, and store for a period of one year, evidence that is pertinent to our investigation and report.  Client will be charged storage fees for the storage of all evidence. By written request of the client, it will be retained for additional periods.  Company and client agree that Company will not be held responsible for retention of file material or evidence after those periods.

**LIMITATION OF LIABILITY**

The total liability of Company, its directors, officers, shareholders, employees, agents, and affiliates for any conduct or services related to or arising under the agreement, whether in tort of contract, shall be limited to the total amount of payments Client made to Company on the assignment, and such amount shall be the complete and exclusive remedy of Client. In no event shall Company, its directors, officers, shareholders, employees, agents or affiliates be liable for any other damages, including direct, indirect, incidental, special, consequential, loss of use, loss of profit, or loss of investment damages.

**ENTIRE AGREEMENT**

The Terms and Conditions and the Engagement Letter shall form the entire agreement between the parties hereto with respect to the subject matter. No oral representations of any officer, agent or employee of Company or client, either before or after execution of this agreement, shall affect or modify any obligation of either party hereunder. Client agrees that it has not been induced to enter into this agreement by any representations, statements or warranties of Company or any officer, agent or employee of Company, other than those herein expressed.

Venue for any legal action brought pursuant to this contract shall be in Harris County, Texas. Texas law will apply to any such proceeding. The prevailing party in any action shall recover from the losing party his reasonable attorney fees and costs of suit incurred, in addition to any other relief granted.

**PROFESSIONAL FEES SCHEDULE**

**Effective January 1, 2005**

I.    **Professional Fees**

The professional staff of Rimkus Consulting Group, Inc. is highly qualified in their respective fields of expertise. We charge for services provided according to the skill level required by the assignment. Work performed on a time and expense basis will be charged in accordance with the Professional Fees Schedule listed below. Work performed on any fixed price contracts will be charged at the agreed fixed amount. Rates for professional consulting services, report preparation, depositions, and court appearances are:

| | |
|---|---|
| Clerk/Typist | $  50 per hour |
| Secretary | $  60 per hour |
| Project Assistant | $  85 per hour |
| Technical Assistant | $ 105 per hour |
| Technical Specialist | $ 125 per hour |
| Technician/Graphic Artist/Accountant II | $ 140 per hour |
| Associate Consultant | $ 160 per hour |
| Consultant | $ 175 per hour |
| Project Consultant | $ 195 per hour |
| Branch Manager/Senior Consultant | $ 215 per hour |
| District Manager/Project Manager | $ 230 per hour |
| Division Manager/Principal Consultant | $ 240 per hour |
| Officer | $ 265 per hour |
| Director | $ 315 per hour |
| Specialized Consulting Services | Fee established prior to use |

II.   At the discretion of Company, a suitable retainer may be required in advance of any services. Such retainer payments will be credited to Client's account. Any unused portion of the retainer following the final invoice by Company will be refunded.

III.  Fixed rate expenses are charged at our rates listed below. Travel and other incidental expenses are charged at cost. If requested, we will provide storage of evidence at a fee listed below. Evidence moving and disposal costs will be paid by Client. Costs of personnel to assist in evidence viewing and testing will be billed to client.

IV.   When third party laboratory work, equipment usage, materials purchasing or testing services are required, a 15% handling charge will be assessed. Client's approval will be obtained before such services are engaged.

V.    The fees shown on this schedule shall remain in effect through December 31, 2005. Beginning January 1, 2006, a new fee schedule will become effective. All services provided on assignments which are performed after January 1, 2006, will be invoiced in accordance with the Professional Fees Schedule in effect at the time the services are provided.

**Fixed Rate Expenses**

| | |
|---|---|
| Personal Vehicles Used On The Assignment | $0.50/Mile |
| Evidence Storage | |
|    –   Items Smaller Than 1 Cubic Foot Volume | $25.00/Month* |
|    –   Items 1 Cubic Foot Volume to 500 Cubic Foot Volume | $50.00/Month* |
|    –   Motor Vehicles | $100.00/Month* |
| Large/Special Handling | To Be Quoted* |
| (Larger Than 500 Cubic Foot Volume Or More Than 1,000 Pounds) | |
| Disposal of Evidence – 20 lbs. or less | $20.00 |
| Disposal of Evidence – 20 lbs. and up | $40.00 |
| Inactive File Storage And Security | $25.00/Year |
| Photographs: Developed From Film or Digital | $0.50/Print |
| Photographs: Developed From Negatives | $1.00/Print |
| CD's of Assignment Photographs | $25.00/CD |
| Facsimile | $1.00/Page |
| Photocopies: Black & White | $0.25/Print |
| Color | $1.50/Print |
| ThermaCAM S60 & P20 (Infrared Camera) | (4 Hour Minimum) $75.00/Hour |
| | (Over 8 Hours) $50.00/Hour |
| ThermaCAM ES (Infrared Camera) | (4 Hour Minimum) $37.50/Hour |
| | (Over 8 Hours) $25.00/Hour |
| English XL Coefficient of Friction Machine | (2 Hour Minimum) $50.00/Hour |
| Various Specialized Software Applications As Required | Quoted Rates |
| (Rates Provided On Assignments Requiring Their Use) | |
| Freight Charges For Mold Samples Sent to Laboratory | $35.00/Per Shipment |

*Billed Quarterly



**Rimkus Consulting Group, Inc.**
**200 S. Audubon Blvd., Suite B**
**Lafayette, Louisiana 70503**
**(337) 237-1511 Telephone**
**(337) 593-0828 Facsimile**

September 26, 2005

Mr. Joseph Rault
400 E. Kaliste Saloom Rd., Suite 3200
Lafayette, LA 70508

       Re:  2400 Veterans Memorial Blvd.
 Subject:  Confirmation of Assignment
RCG File No:  79280

Dear Mr. Rault:

Thank you for selecting Rimkus Consulting Group, Inc. for this assignment.  We have commenced work on this project in accordance with your instructions.  I will coordinate your file throughout the duration of the project, and the professional assigned to manage this project is Nick G. Cammarata, who is classified as a Regional Property Manager.

Unless stated in writing otherwise, our services are limited to providing professional advice, judgments and/or opinions for the exclusive use of our client.

Our terms for providing these services are described in the attached Terms and Conditions.  The Professional Fees Schedule is effective through December 31, 2005.  During the data gathering and analysis phase of this project, our composite hourly charge will be $175.00.  Should this project extend to litigation, the rates for our services will be adjusted to those in the Professional Fees Schedule.

As an addendum to our Terms and Conditions instead of charging directly for the expenses included by our CAT Team we will charge a flat fee of $50.00 an hour to cover these expenses. This $50.00 an hour will cover the following expense items:

| | |
|---|---|
| Hotel | Photographs |
| Car Rental and Fuel | Copies |
| Air Travel/Travel Expenses | Mileage to and from site |
|   to and from Florida | |
| Meals | Faxes |
| Equipment for site work | Phone Service |
| Secretarial Time | E-mail Service |
| Office Supplies | |

This $50.00 an hour does not include the use of highly specialized equipment such as thermal imaging cameras, ground penetrating radar or electrical resistivity equipment, etc.



**EXHIBIT**
A-2



Page 2

**We will invoice you each month for services provided and expenses incurred during the preceding month.  Invoices are due upon receipt.  Interest on unpaid balances more than sixty days old will be charged at the rate of one percent per month.**

We appreciate the opportunity to work with you on this assignment and look forward to being of assistance on this and future projects.

Sincerely

RIMKUS CONSULTING GROUP, INC.

*file copy*

Gary L. Bell
Vice President, Central Region

Enclosure – T&C (Rev. 1/1/05)

## RIMKUS CONSULTING GROUP, INC.

## TERMS AND CONDITIONS
### Effective January 1, 2005

To ensure that the services provided to our Client ("Client") by Rimkus Consulting Group, Inc. ("Company") can be performed in a responsive manner, we have developed broad guidelines which will assist in the orderly performance of our work on a sound business basis. In particular, these guidelines are established to clarify steps to be taken in the event our assignment may involve legal matters or the judicial process, or in cases where multiple Clients are represented by the Company on the same assignment. Unless stated in writing otherwise, our services are limited to providing professional advice, judgments and/or opinions for the exclusive use of our client.

Company will endeavor to provide Client with the appropriate consultants and service at the time of acceptance of each assignment. Company will proceed diligently with the assignment and will perform work in accordance with generally accepted professional practices in a timely manner. Company makes no warranties, express or implied, regarding the outcome of any investigation. Company makes no guarantees or warranties and assumes no obligations except those expressly stated herein.

There shall be no third party beneficiaries to this Agreement.

Work under the Agreement may be terminated by client, or by Company for just cause. This includes, but is not limited to development of a material conflict of interest, judicially required participation in onerous discovery or other legal process outside the intended scope of the work, the presence of circumstances beyond the control of Company such as natural disasters or government intervention or failure of Client to pay amounts due Company in a timely manner.

Our files and reports are developed for our Client's use. We will treat all information, conclusions and results of our investigation as privileged and confidential. Company will release information to others only upon Client's specific instructions or court order. Company will promptly notify Client of any ordered production.

### CHARGES FOR SERVICES

Professional services are provided on a time and expense basis. Client may request an estimate of time or cost required for a project, but unless expressly agreed to the contrary, estimates are for budgeting purposes, not a fixed price quotation.

All time expended for the assignment will be billed, including but not limited to investigations, travel, Client meetings, calculations, review of standards, specifications and drawings, preparation of reports, preparation for testimony, court waiting time and/or standby time requested by Client.

We will use our best efforts to minimize travel costs on domestic and international trips associated with project work. Subject to availability, on flights under five hours in duration, we will utilize economy class. For flights in excess of five hours, we will fly business class, if available, or first class, if not available.

We will invoice you each month for services provided and expenses incurred during the preceding month. Invoices are due upon receipt. Interest on unpaid balances more than sixty days old will be charged at the rate of one percent per month. Payment shall be made in U. S. dollars in Houston, Texas. Payments from foreign countries must be made by wire transfer in U.S. dollars as directed by Company. Company may withhold delivery of reports or data, either written or oral, and may suspend the performance of any further service obligations to the Client pending the payment of all invoices. If client does not pay Company, through no fault of the Company, within the time payment should have been made pursuant to these Terms and Conditions, the Company may, without prejudice to any other available remedy, suspend or delay shipment, delivery and/or performance of any work for client until payment of the entire amount owing is received by Company.

In order to protect the interests of the Client and avoid possible impeachment of testimony, Company personnel are not required to appear for depositions, trials, or hearings pertaining to an assignment, unless all previous billings on this assignment have been fully paid. Company may request advance payments for the estimated time charges and expenses in connection with scheduled testimony appearances.

In any litigation involving Client, or Client and Company, in which Company is required or compelled by subpoena or judicial order to testify at a deposition or trial, or to produce documents regarding work performed by Company for Client, the Client agrees to compensate Company for all time spent and expenses incurred, including time spent in preparing for such testimony and reasonable attorneys fees and expenses incurred in connection with the foregoing. Company will give prompt notice to Client to allow the Client to object to any such testimony or production of documents.

### EXECUTION AND SCOPE OF WORK

Client assumes full and complete responsibility for all uses of the work, report and recommendations developed under the assignment.

Company's policy is to maintain a complete file on each assignment for a period of two years from its inception. Thereafter, the complete file will be maintained only on written instructions to do so and payment of a storage fee. When requested, we will take possession of, and store for a period of one year, evidence that is pertinent to our investigation and report. Client will be charged storage fees for the storage of all evidence. By written request of the client, it will be retained for additional periods. Company and client agree that Company will not be held responsible for retention of file material or evidence after those periods.

## LIMITATION OF LIABILITY

The total liability of Company, its directors, officers, shareholders, employees, agents, and affiliates for any conduct or services related to or arising under the agreement, whether in tort of contract, shall be limited to the total amount of payments Client made to Company on the assignment, and such amount shall be the complete and exclusive remedy of Client. In no event shall Company, its directors, officers, shareholders, employees, agents or affiliates be liable for any other damages, including direct, indirect, incidental, special, consequential, loss of use, loss of profit, or loss of investment damages.

## ENTIRE AGREEMENT

The Terms and Conditions and the Engagement Letter shall form the entire agreement between the parties hereto with respect to the subject matter. No oral representations of any officer, agent or employee of Company or client, either before or after execution of this agreement, shall affect or modify any obligation of either party hereunder. Client agrees that it has not been induced to enter into this agreement by any representations, statements or warranties of Company or any officer, agent or employee of Company, other than those herein expressed.

Venue for any legal action brought pursuant to this contract shall be in Harris County, Texas. Texas law will apply to any such proceeding. The prevailing party in any action shall recover from the losing party his reasonable attorney fees and costs of suit incurred, in addition to any other relief granted.

### PROFESSIONAL FEES SCHEDULE

#### Effective January 1, 2005

I.    **Professional Fees**

The professional staff of Rimkus Consulting Group, Inc. is highly qualified in their respective fields of expertise. We charge for services provided according to the skill level required by the assignment. Work performed on a time and expense basis will be charged in accordance with the Professional Fees Schedule listed below. Work performed on any fixed price contracts will be charged at the agreed fixed amount. Rates for professional consulting services, report preparation, depositions, and court appearances are:

| | |
|---|---|
| Clerk/Typist | $  50 per hour |
| Secretary | $  60 per hour |
| Project Assistant | $  85 per hour |
| Technical Assistant | $ 105 per hour |
| Technical Specialist | $ 125 per hour |
| Technician/Graphic Artist/Accountant II | $ 140 per hour |
| Associate Consultant | $ 160 per hour |
| Consultant | $ 175 per hour |
| Project Consultant | $ 195 per hour |
| Branch Manager/Senior Consultant | $ 215 per hour |
| District Manager/Project Manager | $ 230 per hour |
| Division Manager/Principal Consultant | $ 240 per hour |
| Officer | $ 265 per hour |
| Director | $ 315 per hour |
| Specialized Consulting Services | Fee established prior to use |

II.   At the discretion of Company, a suitable retainer may be required in advance of any services. Such retainer payments will be credited to Client's account. Any unused portion of the retainer following the final invoice by Company will be refunded.

III.  Fixed rate expenses are charged at our rates listed below. Travel and other incidental expenses are charged at cost. If requested, we will provide storage of evidence at a fee listed below. Evidence moving and disposal costs will be paid by Client. Costs of personnel to assist in evidence viewing and testing will be billed to client.

IV.   When third party laboratory work, equipment usage, materials purchasing or testing services are required, a 15% handling charge will be assessed. Client's approval will be obtained before such services are engaged.

V.    The fees shown on this schedule shall remain in effect through December 31, 2005. Beginning January 1, 2006, a new fee schedule will become effective. All services provided on assignments which are performed after January 1, 2006, will be invoiced in accordance with the Professional Fees Schedule in effect at the time the services are provided.

**Fixed Rate Expenses**

| | |
|---|---|
| Personal Vehicles Used On The Assignment | $0.50/Mile |
| Evidence Storage | |
|   –  Items Smaller Than 1 Cubic Foot Volume | $25.00/Month* |
|   –  Items 1 Cubic Foot Volume to 500 Cubic Foot Volume | $50.00/Month* |
|   –  Motor Vehicles | $100.00/Month* |
| Large/Special Handling | To Be Quoted* |
| (Larger Than 500 Cubic Foot Volume Or More Than 1,000 Pounds) | |
| Disposal of Evidence – 20 lbs. or less | $20.00 |
| Disposal of Evidence – 20 lbs. and up | $40.00 |
| Inactive File Storage And Security | $25.00/Year |
| Photographs: Developed From Film or Digital | $0.50/Print |
| Photographs: Developed From Negatives | $1.00/Print |
| CD's of  Assignment Photographs | $25.00/CD |
| Facsimile | $1.00/Page |
| Photocopies: Black & White | $0.25/Print |
| Color | $1.50/Print |
| ThermaCAM S60 & P20 (Infrared Camera) | (4 Hour Minimum) $75.00/Hour |
| | (Over 8 Hours) $50.00/Hour |
| ThermaCAM ES (Infrared Camera) | (4 Hour Minimum) $37.50/Hour |
| | (Over 8 Hours) $25.00/Hour |
| English XL Coefficient of Friction Machine | (2 Hour Minimum) $50.00/Hour |
| Various Specialized Software Applications As Required | Quoted Rates |
| (Rates Provided On Assignments Requiring Their Use) | |
| Freight Charges For Mold Samples Sent to Laboratory | $35.00/Per Shipment |

*Billed Quarterly



**Rimkus Consulting Group, Inc.**
**200 S. Audubon Blvd., Suite B**
**Lafayette, Louisiana  70503**
**(337) 237-1511 Telephone**
**(337) 593-0828 Facsimile**

October 3, 2005

Ms. Marti Frye
Rault Resources
400 E. Kaliste Saloom, Suite 3200
Lafayette, LA  70508

      Re:  400 E. Kaliste Saloom
  Subject:  Confirmation of Assignment
RCG File No:  79342

Dear Ms. Frye:

Thank you for selecting Rimkus Consulting Group, Inc. for this assignment.  We have commenced work on this project in accordance with your instructions.  I will coordinate your file throughout the duration of the project, and the professional assigned to manage this project is Joe D. Hughes, who is classified as a Consultant.

Unless stated in writing otherwise, our services are limited to providing professional advice, judgments and/or opinions for the exclusive use of our client.

Our terms for providing these services are described in the attached Terms and Conditions.  The Professional Fees Schedule is effective through December 31, 2005.  During the data gathering and analysis phase of this project, our composite hourly charge will be $175.00.  Should this project extend to litigation, the rates for our services will be adjusted to those in the Professional Fees Schedule.

As an addendum to our Terms and Conditions instead of charging directly for the expenses included by our CAT Team we will charge a flat fee of $50.00 an hour to cover these expenses. This $50.00 an hour will cover the following expense items:

| | |
|---|---|
| Hotel | Photographs |
| Car Rental and Fuel | Copies |
| Air Travel/Travel Expenses<br>  to and from Florida | Mileage to and from site |
| Meals | Faxes |
| Equipment for site work | Phone Service |
| Secretarial Time | E-mail Service |
| Office Supplies | |

This $50.00 an hour does not include the use of highly specialized equipment such as thermal imaging cameras, ground penetrating radar or electrical resistivity equipment, etc.



EXHIBIT
A-3



Page 2

**We will invoice you each month for services provided and expenses incurred during the preceding month.  Invoices are due upon receipt.  Interest on unpaid balances more than sixty days old will be charged at the rate of one percent per month.**

We appreciate the opportunity to work with you on this assignment and look forward to being of assistance on this and future projects.

Sincerely

RIMKUS CONSULTING GROUP, INC.

*file copy*

Gary L. Bell
Vice President, Central Region

Enclosure – T&C (Rev. 1/1/05)

## RIMKUS CONSULTING GROUP, INC.

## TERMS AND CONDITIONS
### Effective January 1, 2005

To ensure that the services provided to our Client ("Client") by Rimkus Consulting Group, Inc. ("Company") can be performed in a responsive manner, we have developed broad overall guidelines which will assist in the orderly performance of our work on a sound business basis. In particular, these guidelines are established to clarify steps to be taken in the event our assignment may involve legal matters or the judicial process, or in cases where multiple Clients are represented by the Company on the same assignment. Unless stated in writing otherwise, our services are limited to providing professional advice, judgments and/or opinions for the exclusive use of our client.

Company will endeavor to provide Client with the appropriate consultants and service at the time of acceptance of each assignment. *Company will proceed diligently with the assignment and will perform work in accordance with generally accepted professional practices in a timely manner. Company makes no warranties, express or implied, regarding the outcome of any investigation. Company makes no guarantees or warranties and assumes no obligations except those expressly stated herein.*

There shall be no third party beneficiaries to this Agreement.

Work under the Agreement may be terminated by client, or by Company for just cause. This includes, but is not limited to development of a material conflict of interest, judicially required participation in onerous discovery or other legal process outside the intended scope of the work, the presence of circumstances beyond the control of Company such as natural disasters or government intervention or failure of Client to pay amounts due Company in a timely manner.

Our files and reports are developed for our Client's use. We will treat all information, conclusions and results of our investigation as privileged and confidential. Company will release information to others only upon Client's specific instructions or court order. Company will promptly notify Client of any ordered production.

### CHARGES FOR SERVICES

Professional services are provided on a time and expense basis. Client may request an estimate of time or cost required for a project, but unless expressly agreed to the contrary, estimates are for budgeting purposes, not a fixed price quotation.

All time expended for the assignment will be billed, including but not limited to investigations, travel, Client meetings, calculations, review of standards, specifications and drawings, preparation of reports, preparation for testimony, court waiting time and/or standby time requested by Client.

We will use our best efforts to minimize travel costs on domestic and international trips associated with project work. Subject to availability, on flights under five hours in duration, we will utilize economy class. For flights in excess of five hours, we will fly business class, if available, or first class, if not available.

We will invoice you each month for services provided and expenses incurred during the preceding month. Invoices are due upon receipt. Interest on unpaid balances more than sixty days old will be charged at the rate of one percent per month. Payment shall be made in U. S. dollars in Houston, Texas. Payments from foreign countries must be made by wire transfer in U.S. dollars as directed by Company. Company may withhold delivery of reports or data, either written or oral, and may suspend the performance of any further service obligations to the Client pending the payment of all invoices. If client does not pay Company, through no fault of the Company, within the time payment should have been made pursuant to these Terms and Conditions, the Company may, without prejudice to any other available remedy, suspend or delay shipment, delivery and/or performance of any work for client until payment of the entire amount owing is received by Company.

In order to protect the interests of the Client and avoid possible impeachment of testimony, Company personnel are not required to appear for depositions, trials, or hearings pertaining to an assignment, unless all previous billings on this assignment have been fully paid. Company may request advance payments for the estimated time charges and expenses in connection with scheduled testimony appearances.

In any litigation involving Client, or Client and Company, in which Company is required or compelled by subpoena or judicial order to testify at a deposition or trial, or to produce documents regarding work performed by Company for Client, the Client agrees to compensate Company for all time spent and expenses incurred, *including time spent in preparing for such testimony and reasonable attorneys fees and expenses incurred in connection with the foregoing. Company will give prompt notice to Client to allow the Client to object to any such testimony or production of documents.*

### EXECUTION AND SCOPE OF WORK

Client assumes full and complete responsibility for all uses of the work, report and recommendations developed under the assignment.

Company's policy is to maintain a complete file on each assignment for a period of two years from its inception. Thereafter, the complete file will be maintained only on written instructions to do so and payment of a storage fee. When requested, we will take possession of, and store for a period of one year, evidence that is pertinent to our investigation and report. Client will be charged storage fees for the storage of all evidence. By written request of the client, it will be retained for additional periods. Company and client agree that Company will not be held responsible for retention of file material or evidence after those periods.

## LIMITATION OF LIABILITY

The total liability of Company, its directors, officers, shareholders, employees, agents, and affiliates for any conduct or services related to or arising under the agreement, whether in tort of contract, shall be limited to the total amount of payments Client made to Company on the assignment, and such amount shall be the complete and exclusive remedy of Client. In no event shall Company, its directors, officers, shareholders, employees, agents or affiliates be liable for any other damages, including direct, indirect, incidental, special, consequential, loss of use, loss of profit, or loss of investment damages.

## ENTIRE AGREEMENT

The Terms and Conditions and the Engagement Letter shall form the entire agreement between the parties hereto with respect to the subject matter. No oral representations of any officer, agent or employee of Company or client, either before or after execution of this agreement, shall affect or modify any obligation of either party hereunder. Client agrees that it has not been induced to enter into this agreement by any representations, statements or warranties of Company or any officer, agent or employee of Company, other than those herein expressed.

Venue for any legal action brought pursuant to this contract shall be in Harris County, Texas. Texas law will apply to any such proceeding. The prevailing party in any action shall recover from the losing party his reasonable attorney fees and costs of suit incurred, in addition to any other relief granted.

**PROFESSIONAL FEES SCHEDULE**

**Effective January 1, 2005**

I.    **Professional Fees**

The professional staff of Rimkus Consulting Group, Inc. is highly qualified in their respective fields of expertise. We charge for services provided according to the skill level required by the assignment. Work performed on a time and expense basis will be charged in accordance with the Professional Fees Schedule listed below. Work performed on any fixed price contracts will be charged at the agreed fixed amount. Rates for professional consulting services, report preparation, depositions, and court appearances are:

| | |
|---|---|
| Clerk/Typist | $  50 per hour |
| Secretary | $  60 per hour |
| Project Assistant | $  85 per hour |
| Technical Assistant | $ 105 per hour |
| Technical Specialist | $ 125 per hour |
| Technician/Graphic Artist/Accountant II | $ 140 per hour |
| Associate Consultant | $ 160 per hour |
| Consultant | $ 175 per hour |
| Project Consultant | $ 195 per hour |
| Branch Manager/Senior Consultant | $ 215 per hour |
| District Manager/Project Manager | $ 230 per hour |
| Division Manager/Principal Consultant | $ 240 per hour |
| Officer | $ 265 per hour |
| Director | $ 315 per hour |
| Specialized Consulting Services | Fee established prior to use |

II.   At the discretion of Company, a suitable retainer may be required in advance of any services. Such retainer payments will be credited to Client's account. Any unused portion of the retainer following the final invoice by Company will be refunded.

III.  Fixed rate expenses are charged at our rates listed below. Travel and other incidental expenses are charged at cost. If requested, we will provide storage of evidence at a fee listed below. Evidence moving and disposal costs will be paid by Client. Costs of personnel to assist in evidence viewing and testing will be billed to client.

IV.   When third party laboratory work, equipment usage, materials purchasing or testing services are required, a 15% handling charge will be assessed. Client's approval will be obtained before such services are engaged.

V.    The fees shown on this schedule shall remain in effect through December 31, 2005. Beginning January 1, 2006, a new fee schedule will become effective. All services provided on assignments which are performed after January 1, 2006, will be invoiced in accordance with the Professional Fees Schedule in effect at the time the services are provided.

**Fixed Rate Expenses**

| | |
|---|---|
| Personal Vehicles Used On The Assignment | $0.50/Mile |
| Evidence Storage | |
|   –   Items Smaller Than 1 Cubic Foot Volume | $25.00/Month* |
|   –   Items 1 Cubic Foot Volume to 500 Cubic Foot Volume | $50.00/Month* |
|   –   Motor Vehicles | $100.00/Month* |
| Large/Special Handling | To Be Quoted* |
| (Larger Than 500 Cubic Foot Volume Or More Than 1,000 Pounds) | |
| Disposal of Evidence – 20 lbs. or less | $20.00 |
| Disposal of Evidence – 20 lbs. and up | $40.00 |
| Inactive File Storage And Security | $25.00/Year |
| Photographs: Developed From Film or Digital | $0.50/Print |
| Photographs: Developed From Negatives | $1.00/Print |
| CD's of Assignment Photographs | $25.00/CD |
| Facsimile | $1.00/Page |
| Photocopies: Black & White | $0.25/Print |
| Color | $1.50/Print |
| ThermaCAM S60 & P20 (Infrared Camera) | (4 Hour Minimum) $75.00/Hour |
| | (Over 8 Hours) $50.00/Hour |
| ThermaCAM ES (Infrared Camera) | (4 Hour Minimum) $37.50/Hour |
| | (Over 8 Hours) $25.00/Hour |
| English XL Coefficient of Friction Machine | (2 Hour Minimum) $50.00/Hour |
| Various Specialized Software Applications As Required | Quoted Rates |
| (Rates Provided On Assignments Requiring Their Use) | |
| Freight Charges For Mold Samples Sent to Laboratory | $35.00/Per Shipment |

*Billed Quarterly



Rimkus Consulting Group, Inc.
200 S. Audubon Blvd., Suite B
Lafayette, Louisiana 70503
(337) 237-1511 Telephone
(337) 593-0828 Facsimile

October 19, 2005

Mr. Joseph Rault
Rault Resources
400 E. Kaliste Saloom, Suite 3200
Lafayette, LA 70508

              Re: 611 Northline
         Subject: Confirmation of Assignment
    RCG File No: 79557

Dear Mr. Rault:

Thank you for selecting Rimkus Consulting Group, Inc. for this assignment. We have commenced work on this project in accordance with your instructions. I will coordinate your file throughout the duration of the project, and the professional assigned to manage this project is Nick G. Cammarata, who is classified as a Regional Property Manager.

Unless stated in writing otherwise, our services are limited to providing professional advice, judgments and/or opinions for the exclusive use of our client.

Our terms for providing these services are described in the attached Terms and Conditions. The Professional Fees Schedule is effective through December 31, 2005. During the data gathering and analysis phase of this project, our composite hourly charge will be $175.00. Should this project extend to litigation, the rates for our services will be adjusted to those in the Professional Fees Schedule.

As an addendum to our Terms and Conditions instead of charging directly for the expenses included by our CAT Team we will charge a flat fee of $50.00 an hour to cover these expenses. This $50.00 an hour will cover the following expense items:

| | |
|---|---|
| Hotel | Photographs |
| Car Rental and Fuel | Copies |
| Air Travel/Travel Expenses | Mileage to and from site |
|   to and from Louisiana | |
| Meals | Faxes |
| Equipment for site work | Phone Service |
| Secretarial Time | E-mail Service |
| Office Supplies | |

This $50.00 an hour does not include the use of highly specialized equipment such as thermal imaging cameras, ground penetrating radar or electrical resistivity equipment, etc.



EXHIBIT
A-4



Page 2

**We will invoice you each month for services provided and expenses incurred during the preceding month.  Invoices are due upon receipt.  Interest on unpaid balances more than sixty days old will be charged at the rate of one percent per month.**

We appreciate the opportunity to work with you on this assignment and look forward to being of assistance on this and future projects.

Sincerely

RIMKUS CONSULTING GROUP, INC.

Gary L. Bell
Vice President, Central Region

Enclosure – T&C (Rev. 1/1/05)

# RIMKUS CONSULTING GROUP, INC.

## TERMS AND CONDITIONS
### Effective January 1, 2005

To ensure that the services provided to our Client ("Client") by Rimkus Consulting Group, Inc. ("Company") can be performed in a responsive manner, we have developed broad overall guidelines which will assist in the orderly performance of our work on a sound business basis. In particular, these guidelines are established to clarify steps to be taken in the event our assignment may involve legal matters or the judicial process, or in cases where multiple Clients are represented by the Company on the same assignment. Unless stated in writing otherwise, our services are limited to providing professional advice, judgments and/or opinions for the exclusive use of our client.

Company will endeavor to provide Client with the appropriate consultants and service at the time of acceptance of each assignment. *Company will proceed diligently with the assignment and will perform work in accordance with generally accepted professional practices in a timely manner. Company makes no warranties, express or implied, regarding the outcome of any investigation. Company makes no guarantees or warranties and assumes no obligations except those expressly stated herein.*

There shall be no third party beneficiaries to this Agreement.

Work under the Agreement may be terminated by client, or by Company for just cause. This includes, but is not limited to development of a material conflict of interest, judicially required participation in onerous discovery or other legal process outside the intended scope of the work, the presence of circumstances beyond the control of Company such as natural disasters or government intervention or failure of Client to pay amounts due Company in a timely manner.

Our files and reports are developed for our Client's use. We will treat all information, conclusions and results of our investigation as privileged and confidential. Company will release information to others only upon Client's specific instructions or court order. Company will promptly notify Client of any ordered production.

## CHARGES FOR SERVICES

Professional services are provided on a time and expense basis. Client may request an estimate of time or cost required for a project, but unless expressly agreed to the contrary, estimates are for budgeting purposes, not a fixed price quotation.

All time expended for the assignment will be billed, including but not limited to investigations, travel, Client meetings, calculations, review of standards, specifications and drawings, preparation of reports, preparation for testimony, court waiting time and/or standby time requested by Client.

We will use our best efforts to minimize travel costs on domestic and international trips associated with project work. Subject to availability, on flights under five hours in duration, we will utilize economy class. For flights in excess of five hours, we will fly business class, if available, or first class, if not available.

We will invoice you each month for services provided and expenses incurred during the preceding month. Invoices are due upon receipt. Interest on unpaid balances more than sixty days old will be charged at the rate of one percent per month. Payment shall be made in U. S. dollars in Houston, Texas. Payments from foreign countries must be made by wire transfer in U.S. dollars as directed by Company. Company may withhold delivery of reports or data, either written or oral, and may suspend the performance of any further service obligations to the Client pending the payment of all invoices. If client does not pay Company, through no fault of the Company, within the time payment should have been made pursuant to these Terms and Conditions, the Company may, without prejudice to any other available remedy, suspend or delay shipment, delivery and/or performance of any work for client until payment of the entire amount owing is received by Company.

In order to protect the interests of the Client and avoid possible impeachment of testimony, Company personnel are not required to appear for depositions, trials, or hearings pertaining to an assignment, unless all previous billings on this assignment have been fully paid. Company may request advance payments for the estimated time charges and expenses in connection with scheduled testimony appearances.

In any litigation involving Client, or Client and Company, in which Company is required or compelled by subpoena or judicial order to testify at a deposition or trial, or to produce documents regarding work performed by Company for Client, the Client agrees to compensate Company for all time spent and expenses incurred, including time spent in preparing for such testimony and reasonable attorneys fees and expenses incurred in connection with the foregoing. Company will give prompt notice to Client to allow the Client to object to any such testimony or production of documents.

## EXECUTION AND SCOPE OF WORK

Client assumes full and complete responsibility for all uses of the work, report and recommendations developed under the assignment.

Company's policy is to maintain a complete file on each assignment for a period of two years from its inception. Thereafter, the complete file will be maintained only on written instructions to do so and payment of a storage fee. When requested, we will take possession of, and store for a period of one year, evidence that is pertinent to our investigation and report. Client will be charged storage fees for the storage of all evidence. By written request of the client, it will be retained for additional periods. Company and client agree that Company will not be held responsible for retention of file material or evidence after those periods.

## LIMITATION OF LIABILITY

The total liability of Company, its directors, officers, shareholders, employees, agents, and affiliates for any conduct or services related to or arising under the agreement, whether in tort of contract, shall be limited to the total amount of payments Client made to Company on the assignment, and such amount shall be the complete and exclusive remedy of Client. In no event shall Company, its directors, officers, shareholders, employees, agents or affiliates be liable for any other damages, including direct, indirect, incidental, special, consequential, loss of use, loss of profit, or loss of investment damages.

## ENTIRE AGREEMENT

The Terms and Conditions and the Engagement Letter shall form the entire agreement between the parties hereto with respect to the subject matter. No oral representations of any officer, agent or employee of Company or client, either before or after execution of this agreement, shall affect or modify any obligation of either party hereunder. Client agrees that it has not been induced to enter into this agreement by any representations, statements or warranties of Company or any officer, agent or employee of Company, other than those herein expressed.

Venue for any legal action brought pursuant to this contract shall be in Harris County, Texas. Texas law will apply to any such proceeding. The prevailing party in any action shall recover from the losing party his reasonable attorney fees and costs of suit incurred, in addition to any other relief granted.

**PROFESSIONAL FEES SCHEDULE**

**Effective January 1, 2005**

I.     **Professional Fees**

The professional staff of Rimkus Consulting Group, Inc. is highly qualified in their respective fields of expertise. We charge for services provided according to the skill level required by the assignment. Work performed on a time and expense basis will be charged in accordance with the Professional Fees Schedule listed below. Work performed on any fixed price contracts will be charged at the agreed fixed amount. Rates for professional consulting services, report preparation, depositions, and court appearances are:

| | |
|---|---|
| Clerk/Typist | $  50 per hour |
| Secretary | $  60 per hour |
| Project Assistant | $  85 per hour |
| Technical Assistant | $ 105 per hour |
| Technical Specialist | $ 125 per hour |
| Technician/Graphic Artist/Accountant II | $ 140 per hour |
| Associate Consultant | $ 160 per hour |
| Consultant | $ 175 per hour |
| Project Consultant | $ 195 per hour |
| Branch Manager/Senior Consultant | $ 215 per hour |
| District Manager/Project Manager | $ 230 per hour |
| Division Manager/Principal Consultant | $ 240 per hour |
| Officer | $ 265 per hour |
| Director | $ 315 per hour |
| Specialized Consulting Services | Fee established prior to use |

II.    At the discretion of Company, a suitable retainer may be required in advance of any services. Such retainer payments will be credited to Client's account. Any unused portion of the retainer following the final invoice by Company will be refunded.

III.   Fixed rate expenses are charged at our rates listed below. Travel and other incidental expenses are charged at cost. If requested, we will provide storage of evidence at a fee listed below. Evidence moving and disposal costs will be paid by Client. Costs of personnel to assist in evidence viewing and testing will be billed to client.

IV.    When third party laboratory work, equipment usage, materials purchasing or testing services are required, a 15% handling charge will be assessed. Client's approval will be obtained before such services are engaged.

V.     The fees shown on this schedule shall remain in effect through December 31, 2005. Beginning January 1, 2006, a new fee schedule will become effective. All services provided on assignments which are performed after January 1, 2006, will be invoiced in accordance with the Professional Fees Schedule in effect at the time the services are provided.

**Fixed Rate Expenses**

| | |
|---|---|
| Personal Vehicles Used On The Assignment | $0.50/Mile |
| Evidence Storage | |
| – Items Smaller Than 1 Cubic Foot Volume | $25.00/Month* |
| – Items 1 Cubic Foot Volume to 500 Cubic Foot Volume | $50.00/Month* |
| – Motor Vehicles | $100.00/Month* |
| Large/Special Handling | To Be Quoted* |
| (Larger Than 500 Cubic Foot Volume Or More Than 1,000 Pounds) | |
| Disposal of Evidence – 20 lbs. or less | $20.00 |
| Disposal of Evidence – 20 lbs. and up | $40.00 |
| Inactive File Storage And Security | $25.00/Year |
| Photographs: Developed From Film or Digital | $0.50/Print |
| Photographs: Developed From Negatives | $1.00/Print |
| CD's of  Assignment Photographs | $25.00/CD |
| Facsimile | $1.00/Page |
| Photocopies: Black & White | $0.25/Print |
| Color | $1.50/Print |
| ThermaCAM S60 & P20 (Infrared Camera) | (4 Hour Minimum) $75.00/Hour |
| | (Over 8 Hours) $50.00/Hour |
| ThermaCAM ES (Infrared Camera) | (4 Hour Minimum) $37.50/Hour |
| | (Over 8 Hours) $25.00/Hour |
| English XL Coefficient of Friction Machine | (2 Hour Minimum) $50.00/Hour |
| Various Specialized Software Applications As Required | Quoted Rates |
| (Rates Provided On Assignments Requiring Their Use) | |
| Freight Charges For Mold Samples Sent to Laboratory | $35.00/Per Shipment |

*Billed Quarterly

# Joseph M. Rault, Jr.
110 Veterans Blvd.
Suite 110
Metairie, LA  70005

---

June 23, 2006

Rimkus
P.O. Box 4437
Houston, TX  77210

    RE:  611 Northline
        Metairie, LA  70005

This will acknowledge and respond to your invoice #6133188 dated February 23, 2006 in the amount of $2,210.00.

Our former residence at 611 Northline has now been demolished by the Parish of Jefferson/Corps of Engineers as a result of the structural damage caused by the impact of the tree.

In order for us to process your invoice further, we would appreciate your sending us a copy of the report resulting from the services set forth in your billing.

Yours truly,



Joseph M. Rault

Enclosure

EXHIBIT

B

**1638**

**Lafayette West, LLC**

    Rimkus

| | |
|---|---|
| Check Number: | 1638 |
| Check Date: | Oct 1, 2006 |

| | | |
|---|---|---|
| Check Amount: | $820.00 | |
| Discount Taken | | Amount Paid |

Item to be Paid - Description

6125590                                                               820.00

---

**Compass Bank**

*POSTED*

 79271

RIMKUS CONSULTING LOUISIANA - 4437 10/05/2006 74018-1378    2    $820.00

1638

**Lafayette West, LLC**
Rault Resources, Inc., Manager
400 E. Kaliste Saloom Road
Lafayette, LA 70508

HIBERNIA NATIONAL BANK
NEW ORLEANS, LOUISIANA

14-9/660

Check Number: 1638      DATE Oct 1, 2006

Memo:

                                     AMOUNT

                                    $ 820.00

Eight Hundred Twenty and 00/100 Dollars

PAY
TO THE
ORDER
OF:
    Rimkus
    P.O. Box 4437
    Houston, TX 77210-4422

                                        AUTHORIZED SIGNATURE

⑈001638⑈ ⑆065000090⑆208 05 4486 7⑈



**EXHIBIT**