## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| RIMKUS CONSULTING GROUP, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-07-1494 |
| | § | |
| RAULT RESOURCES, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Rimkus Consulting Group, Inc. ("Rimkus") sued its client, Rault Resources, Inc. ("Rault Resources"), and the president of Rault Resources, Joseph M. Rault, in state court in Harris County, Texas, alleging breach of contract.  The defendants timely removed. (Docket Entry No. 1).  The defendants then moved to dismiss Rimkus's complaint for lack of personal jurisdiction.  (Docket Entry Nos. 3, 4).  Rimkus responded, (Docket Entry No. 8).  The defendants replied, (Docket Entry No. 15), then filed a supplemental reply, (Docket Entry No. 22), to which Rimkus filed a supplemental response, (Docket Entry No. 27).

Based on the motion, responses, and replies, the record, and the applicable law, this court denies the defendants' motion to dismiss.  The reasons for this ruling are explained below.

## I.    Background

Rimkus is a Texas corporation that provides forensic consulting services.  Its principal place of business is in Texas.  Rault Resources is a New Mexico corporation that owns and

manages real estate in Louisiana.  Its principal place of business is in Louisiana.  Rault is a Louisiana resident.

In September and October 2005, Rault and Rault Resources hired Rimkus to perform five separate property-damage evaluations on Rault Resources properties in Louisiana.  The jobs included an evaluation of damage from a lightning strike, three hurricane storm-damage evaluations, and an evaluation of moisture intrusion.  The three hurricane storm-damage evaluations and the moisture-intrusion evaluation are the subject of this suit.

For each evaluation, a Rault Resources employee in Louisiana contacted Rimkus in Louisiana to discuss the work to be performed.  Rimkus subsequently sent Rault Resources a "Confirmation of Assignment" letter with terms and conditions.  Three of the letters were addressed to Rault in Louisiana and stated that the project manager was Nick G. Cammarata. The fourth letter was addressed to Marti Frye, a Rault employee, in Louisiana and stated that the project manager was Joe D. Hughes.  The letters were sent on stationery with letterhead identifying the company as "Rimkus Consulting Group, Inc." with a Louisiana address.  Each of the four letters was substantially similar and stated as follows:

> Dear Mr. Rault:
>
> Thank you for selecting Rimkus Consulting Group, Inc. for this assignment.  We have commenced work on this project in accordance with your instructions.  I will coordinate your file throughout the duration of the project, and the professional assigned to manage this project is Nick G. Cammarata, who is classified as a Regional Property Manager.

Unless stated in writing otherwise, our services are limited to providing professional advice, judgments and/or opinions for the exclusive use of our client.

Our terms for providing these services are described in the attached Terms and Conditions. The Professional Fees Schedule is effective through December 31, 2005. During the data gathering and analysis phase of this project, our composite hourly charge will be $175.00. Should this project extend to litigation, the rates for our services will be adjusted to those in the Professional Fees Schedule.
. . .
We will invoice you each month for services provided and expenses incurred during the preceding month. Invoices are due upon receipt. Interest on unpaid balances more than sixty days old will be charged at the rate of one percent per month.

We appreciate the opportunity to work with you on this assignment and look forward to being of assistance on this and future projects.

Sincerely

RIMKUS CONSULTING GROUP, INC.

Gary L. Bell
Vice President, Central Region

(Docket Entry No. 8, Exs. A-1, A-2, A-3, A-4). The terms and conditions were the same for each evaluation. Each set of terms and conditions included forum-selection and choice-of-law clauses that stated, "Venue for any legal action brought pursuant to this contract shall be in Harris County, Texas. Texas law will apply to any such proceeding." (*Id.*, Exs. A-1, A-2, A-3, A-4).

Rimkus sent Rault Resources invoices for the work performed on the Rault Resources properties. The invoices were sent on the letterhead of "Rimkus Consulting Group, Inc. of

Louisiana," with a Houston, Texas P.O. Box.  Payment was to be  made to the "Rimkus
Consulting Group" and the only address given was the Houston P.O. Box.  (Docket Entry
No. 1, Ex. B-1).

    In the motion to dismiss for lack of personal jurisdiction, the defendants initially
argued that "[t]he only possible contract between the parties was oral." (Docket Entry No.
4 at 7).  The defendants later conceded that "the engagement letters themselves contain the
essential terms of the agreement between the parties" and "form the contract between the
parties in this case."  (Docket Entry No. 15 at 3).  Rault Resources and Rault concede that
they were both parties to the letter agreements with Rimkus.  (Docket Entry No. 22 at 1–2).
The defendants argue, however, that "the parties agreed to the terms solely contained in the
engagement letter" and not the "terms and conditions" attachment.  (Docket Entry No. 15 at
4).  The defendants argue that they did not agree to the forum-selection clause specifying
Harris County, Texas as the venue to resolve legal actions "brought pursuant to this
contract."  The defendants assert that "[a]ll discussions and dealings occurred in Louisiana,
the oral agreement was entered into in Louisiana, and the consulting work was done in
Louisiana."  (Docket Entry No. 4 at 1).  The defendants emphasize that they contacted
Rimkus at its Louisiana office and that its invoices were on the letterhead of "Rimkus
Consulting Group, Inc. of Louisiana."

    Rimkus argues that the forum-selection clauses are part of the written agreements
between the parties and that the defendants "either consented to personal jurisdiction or
waived the requirements for personal jurisdiction in a Texas forum."  (Docket Entry No. 8

4

at 5).  Citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991), Rimkus argues that "even in a non-negotiated contract, a forum selection clause is valid so long as it is not fundamentally unfair."  (*Id.* at 7).  Rimkus points out that the defendants received the terms and conditions attached to the Confirmation of Assignment letters on five separate occasions and did not object to the terms.  Rimkus also emphasizes that the defendants continued to contract with Rimkus for additional evaluations after receiving the terms and conditions for, and accepting performance of, the first evaluation, which is not in dispute.  The defendants sent a check to Rimkus's Houston P.O. Box for this first evaluation on October 1, 2006. (Docket Entry No. 8, Ex. C).

Each argument related to personal jurisdiction is addressed below.

## II.     The Standard for a Motion to Dismiss for Lack of Personal Jurisdiction

A federal court may exercise personal jurisdiction over a nonresident defendant if: (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the exercise of such jurisdiction comports with due process under the U.S. Constitution.  *See Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999).  Because the Texas long-arm statute has been interpreted to extend as far as due process permits, the sole inquiry is whether the exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional due process requirements. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003); TEX. CIV. PRAC. & REM. CODE §§ 17.041–17.045.

5

"[T]he personal jurisdiction requirement is a waivable right." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985). Parties may "stipulate in advance to submit their controversies for resolution within a particular jurisdiction." *Id.* "[C]ontractual clauses purporting to waive federal jurisdiction must be mandatory and not merely permissive." *Collin County v. Siemens Bus. Servs., Inc.*, 250 Fed. Appx. 45, 51 (5th Cir. 2007). A forum-selection clause is "mandatory" if it "contains clear language showing that jurisdiction is appropriate only in a designated forum." *Von Graffenreid v. Craig*, 246 F. Supp. 2d 553, 560 (N.D. Tex. 2003). "By contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere." *Id.* The forum-selection clause at issue is mandatory, not permissive.

Courts in the Fifth Circuit analyze the validity of forum-selection and choice-of-law clauses under federal law, regardless of whether jurisdiction is based on diversity or on a federal question. *See Haynsworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 1997); *Int'l Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 115 (5th Cir. 1996). Under federal law, forum-selection and choice-of-law provisions are presumptively valid. *Mitsui & Co. (USA), Inc. v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 640 (1985)). The presumption of enforceability may be overcome by a clear showing that the clause is unreasonable under the circumstances. *Haynsworth*, 121 F.3d at 963 (citing *The Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 10 (1972)); *see also Amplicon*, 77 F.3d at 114–15; *Canvas Records, Inc. v. Koch Entm't Distribution, LLC*, No. 07-cv-0373, 2007 WL 1239243, at *4 (S.D. Tex. Apr. 27, 2007); *Top*

6

*Branch Tree Serv. & Landscaping v. Omni Pinnacle, LLC*, No. 06-cv-3723, 2007 WL 1234976, at *1 (E.D. La. Apr. 26, 2007); *Nayani v. Horseshoe Entm't*, No. 06-cv-1540, 2007 WL 1062561, at *6 (N.D. Tex. Apr. 10, 2007).  Unreasonableness may exist if the forum-selection or choice-of-law provision is the product of fraud or overreaching; if the party seeking to escape enforcement will effectively be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; if the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or if enforcement of the provision contravenes a strong public policy of the forum state.  *Haynsworth*, 121 F.3d at 963 (citing *Carnival Cruise Lines*, 499 U.S. at 595).  "A valid forum-selection clause is given controlling weight in all but the most exceptional cases."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring).

## III.    Analysis

### A.    The Forum-Selection Clauses

The defendants argue that the terms and conditions attachments containing the forum-selection clause were not part of the contracts with Rimkus.  Alternatively, the defendants argue that if the forum-selection clauses were part of their contracts, the clauses were unreasonable and therefore invalid.

The defendants assert that the terms and conditions were not part of the letter agreements with Rimkus for the property-damage evaluations.  The defendants argue that "the engagement letters themselves contain the essential terms of the agreement between the parties" and "form the contract between the parties in this case," but that "the parties agreed

7

to the terms solely contained in the engagement letter" and not the terms and conditions attached.  (Docket Entry No. 15 at 3–4).  The defendants point out that the terms and conditions attachments were not signed by either party and do not contain the essential elements of a valid contract.  (*Id.* at 3).  The defendants point out that the price schedules in the terms and conditions attachments to the engagement letters were different from the price terms set out in the letters.  The defendants argue that the terms and conditions were standard forms unilaterally imposed on the defendants without any "meeting of the minds."  (*Id.* at 4).

The first issue is what state law applies to determine whether the forum-selection clauses in the terms and conditions attached to the engagement letters were part of the parties' contracts.  In a diversity action, a federal court applies the choice-of-law rules of the forum state.  *Smith v. Waste Mgmt., Inc.*, 407 F.3d 381, 384 n.1 (5th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  In construing a contract, Texas courts apply the law of the forum with the "most significant relationship" to the contract.  *See Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004); *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 707 (5th Cir. 1999).  Under this test, courts look at the quality, rather than the quantity, of the parties' contacts with a particular jurisdiction.  *See Jackson v. W. Telemktg. Corp. Outbound*, 245 F.3d 518, 523 (5th Cir. 2001).  Texas courts look to the specific contacts or "factors" listed in the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 to determine which law governs the contract.  *See Mayo*, 354 F.3d at 404; *Minn. Min. & Mfg. Co. v. Nishika, Ltd.*, 953 S.W.2d 733, 735–36 (Tex. 1997).  The relevant factors are: (a) the place of contracting; (b) the place of

8

negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.  RESTATEMENT (SECOND) OF CONFLICT OF LAWS §188(2) (1971).

In this case, the defendants contacted Rimkus's Louisiana office to arrange the property evaluations.  The engagement letters were addressed to the defendants in Lafayette, Louisiana, on letterhead showing Rimkus's Louisiana address.  The contracts concerned the on-site evaluation of properties in Louisiana.  The terms and conditions, however, specified that Texas law applies.  The contract-formation issue is analyzed under both Texas and Louisiana law.        Under Louisiana law, "[i]n any action based on contract, three elements must be proven: 1) an offer, 2) an acceptance, and 3) the consent of the parties."  *Chaisson v. Chaisson*, 690 So.2d 899, 900 (La. Ct. App. 1997) (citing La. Civ. Code art. 1927). "Absent any formalities as may required by law, an offer and acceptance may be made 'orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.'"  *Id.* (quoting La. Civ. Code art. 1927.); *see also Lambert v. Don M. Barron Contractor, Inc.*, 974 So.2d 198, 201 (La. Ct. App. 2008). "When, because of special circumstances, the offeree's silence leads the offeror reasonably to believe that a contract has been formed, the offer is deemed accepted."  *Lambert*, 974 So.2d at 201 (quoting La. Civ. Code art. 1942).

Under Texas law, "[a] valid and binding contract is formed by: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the

intent that it be mutual and binding." *Vt. Info. Processing, Inc. v. Mont. Beverage Corp.*, 227 S.W.3d 846, 853 (Tex. App.–El Paso 2007, no pet.); *Critchfield v. Smith*, 151 S.W.3d 225, 233 (Tex. App.–Tyler 2004, pet. denied).  "[I]f one party signs a contract, the other may accept by her acts, conduct, or acquiescence to the terms of the contract, making it a binding agreement on both parties." *Jones v. Citibank (South Dakota), N.A.*, 235 S.W.3d 333, 339 (Tex. App.–Fort Worth 2007, no pet.).  "As a general rule of law, inaction is not construed as assent or approval. . . . [b]ut a narrow exception may apply where the parties' relationship or the surrounding circumstances justify the expectation of a reply; under proper circumstances the parties may be justified in assuming inaction or silence indicates approval."  *Commercial Bank of Tex., N.A. v. Luce*, 92 S.W.3d 636, 639 (Tex. App.–Beaumont 2002, no pet.).

Each of the engagement letters, which the defendants concede are valid contracts between the parties, stated: "Our terms for providing these services are described in the attached Terms and Conditions."  (Docket Entry No. 8, Exs. A-1, A-2, A-3, A-4).  Under both Texas and Louisiana contract law, a document attached to a contract may be part of that contract.  "As a general rule of contract law, separate documents may be incorporated into a contract by attachment or reference thereto."  *Russellville Steel Co., Inc. v. A & R Excavating, Inc.*, 624 So.2d 11, 13 (La. Ct. App. 1993) (citing *Action Fin. Corp. v. Nichols*, 180 So.2d 81 (La. Ct. App. 1965)); *accord In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) ("A contractual term is not rendered invalid merely because it exists in a document incorporated by reference.").  "Other writings referred to in an instrument, it has

been uniformly held, become a part of the agreement between the parties with the same force and effect as if the provisions had been contained in the basic contract where the parties intended it to have such effect." *Action Fin.*, 180 So.2d at 83; *accord In re D. Wilson Constr. Co.*, 196 S.W.3d at 781.

The terms and conditions attachments are incorporated into the engagement-letter contracts between the parties.  There is no conflict between the forum-selection or choice-of-law clauses in the terms and conditions attachments and the engagement letters.  The terms and conditions are part of the contracts the parties formed.

The defendants alternatively argue that the forum-selection clauses specifying Harris County, Texas as the forum for any legal disputes arising out of the agreements are unenforceable as unreasonable.  The defendants assert that:  they were unaware of the "fine print"; they believed they were dealing with a Louisiana business; the clauses were not negotiated and were part of a standard form; and the clauses favor Rimkus, which is located in Harris County, Texas, and disadvantage the defendants, located in Louisiana.  The defendants argue that both Rault Resources and Rault are in Louisiana, the properties inspected are located in Louisiana, the services were performed in Louisiana, key witnesses are located in Louisiana, and Rault has been advised by his doctor not to travel because of recent eye surgery.

The record does not disclose a basis to find the forum-selection clause unreasonable under the standard set by the case law.  The forum-selection clause was not the product of fraud or overreaching.  The clause was in the terms and conditions attachment to the

engagement letters.  Each letter clearly stated that the attached terms and conditions applied.

Each engagement letter was less than one and one-half pages long and the terms and

conditions attachment was only two and one-half pages, and one of those pages was the fee

schedule.  The forum-selection clause was clear and unambiguous.  It was set off in a

separate paragraph that stated: "Venue for any legal action brought pursuant to this contract

shall be in Harris County, Texas.  Texas law will apply to any such proceeding."  (Docket

Entry No. 8, Exs, A-1, A-2, A-3, A-4).  There is no evidence of a major disparity in

bargaining power between Rimkus on the one hand and Rault Resources and Rault on the

other.  The fact that the clause is in a standard form that Rimkus attached to all its

engagement letters does not make it unenforceable.  "The mere fact that an agreement

containing a forum selection clause is a contract of adhesion does not render the clause

unenforceable."  *Mathews v. Rescuecom Corp.*, No. Civ.A. 05-4834JEI, 2006 WL 414096,

at *6 (3d Cir. Feb 16, 2006); *see also Carnival Cruise Lines*, 499 U.S. at 594–95 (1991)

(holding that forum-selection clause on back of cruise ticket was enforceable despite lack of

bargaining over the terms of the clause); *Foster v. Chesapeake Ins. Co., Ltd.*, 933 F.2d 1207,

1219 (3d Cir. 1991) ("That there may not have been actual negotiations over the [forum-

selection] clause does not affect its validity.").  The defendants' allegation of overreaching

is undermined by the fact that they received a copy of the terms and conditions on five

separate occasions, never objected to the terms, and continued to enter into agreements with

Rimkus.  *See Mathews*, 2006 WL 414096, at *6 (finding that a forum-selection clause was

not the product of overreaching in part because the party challenging the clause had signed

an identical agreement one year earlier, and "[i]n that time period he surely had time to review the first Agreement, which was identical to the second Agreement, and seek the advice of counsel regarding the terms. . . . if the terms of the original Agreement were as unfair and unreasonable as Plaintiff alleges, it is certainly surprising that he would enter into an identical contract under the same bargaining conditions only a year later.").

The other facts that the defendants identify, including their own location, the location of the services performed, and the location of witnesses, may show that Louisiana is a more convenient forum than Texas.  These facts do not show that enforcing the forum-selection clause would be so gravely inconvenient or unfair that the defendants would effectively be deprived of their day in court.  *See Carnival Cruise Lines*, 499 U.S. at 594 (finding that it was not unreasonable to enforce a provision designating Florida as the forum for any lawsuit arising out of a contract when the party challenging the clause lived in Washington state); *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 Fed. Appx. 612, 617 (5th Cir. 2007) (finding that enforcement of a forum-selection clause was not unreasonable simply because "it would be very expensive and take a long time to bring suit . . . ."); *Mathews*, 2006 WL 414096, at *6 (finding that traveling 260 miles was not so burdensome as to effectively deny the party challenging the forum-selection clause his day in court); *Bense v. Interstate Battery Sys. of Am., Inc.*, 683 F.2d 718, 722 (2d Cir. 1982) (rejecting plaintiff's claims that the inconvenience and expense associated with traveling from Vermont to Texas would effectively deny him his day in court); *Weiss v. Columbia Pictures Television, Inc.*, 801 F.

13

Supp. 1276, 1279 (S.D.N.Y. 1992) ("Mere inconvenience and expense of traveling are not, standing alone, adequate reasons to disturb the parties' contractual choice of forum.").

Rault's medical condition and his asserted inability to travel do not make it unreasonable to enforce the forum-selection clause as to him under the applicable legal standards. The cases show that medical problems or physical disabilities must be extremely severe and generally accompanied by financial hardship to warrant a finding that it would be unreasonable to enforce a forum-selection clause. In *Murphy v. Schneider National, Inc.*, 362 F.3d 1133 (9th Cir. 2004), the court refused to enforce a forum-selection clause in an employment agreement requiring venue in Wisconsin against an Oregon resident who claimed both financial hardship and a physical disability that prevented him from sitting for long hours. The plaintiff submitted an affidavit stating that he had been unable to work, that he and his wife lived on an estimated $2,234 per month in disability payments, and that he could not afford to maintain the case if the venue was not local. *Id.* at 1138. The court found that "the combination of Murphy's alleged financial troubles and physical limitations would bar him from litigating his claim." *Id.* at 1143.

Similarly, in *Walker v. Carnival Cruise Lines*, 107 F. Supp. 2d 1135, 1138 (N.D. Cal. 2000), the court found that the "plaintiffs' physical disabilities and economic constraints are so severe that, in combination, they would preclude plaintiffs from having their day in court" if the plaintiffs were forced to litigate their claims in Florida instead of California. One plaintiff suffered from chronic progressive multiple sclerosis and had less than $400 per month of discretionary income for a family of four, and the other plaintiff was a quadriplegic

14

with less than $700 disposable income per month for a family of three. *Id.* at 1141. Both plaintiffs suffered from a severe lack of bladder and bowel control that made travel extremely difficult. *Id.* The court stated that enforcing the forum-selection clause would impose a "Hobson's choice" between necessities such as food and redress for civil rights violations. The "degree, combination, or cumulative effect of severe physical and economic disabilities" led the court to find that enforcing the forum-selection clause would be unreasonable. *Id.* at 1142.

In *Pratt v. Silversea Cruises, Ltd.*, No. C 05-0693 SI, 2005 WL 1656891, at *1 (N.D. Cal. July 13, 2005), by contrast, the court found that it was not unreasonable to enforce a Florida forum-selection clause against an 83-year-old California woman who suffered from a broken hip, a torn ACL in her right knee, and severe ankle injuries when she fell on a cruise ship enroute from San Diego to San Francisco. The only evidence submitted by the plaintiff to support her claim that her health prevented her from traveling from California to Florida was a declaration from one of her treating physicians stating that her injuries "will prevent her from traveling from San Diego to Florida because of her limited mobility and continued pain." *Id.* at *4. The court stated that even if factual disputes over the severity of the injuries were resolved in favor of the plaintiff, it would not be unreasonable to enforce the forum-selection clause because the plaintiff had not claimed financial hardship. The court explained:

> To meet the heavy burden required to overcome the presumption that a forum selection clause is valid, plaintiff must show that it is an impossibility for her to try her case, not simply a less convenient or effective means of doing so.

15

> Financial stability enables a plaintiff to secure appropriate means of travel and medical assistance unavailable to those facing extreme poverty. Likewise, the availability of electronic filing and video and teleconferencing technology limits the need for travel. In addition, in [a] civil case, a plaintiff may pursue a claim without appearing in court in person.

*Id.*; *see also Miller v. Regency Maritime Corp.*, 824 F. Supp. 200, 202 (N.D. Fla. 1992) (finding that passenger's alleged physical and financial inability to travel to forum did not render ticket's forum-selection clause fundamentally unfair).

In this case, the only evidence supporting Rault's assertion that he would be unable to travel to Houston is his own affidavit dated December 6, 2007 stating that because of a detached retina and recent surgery to repair it, "I have been instructed by Dr. Rachel that I cannot travel as a result of my surgery and eye condition, and I will be unable to travel for an as yet undetermined period of time." (Docket Entry No. 22, Ex. C).  This evidence is not sufficient to show that enforcing the forum-selection clause is unreasonable. *See Pratt*, 2005 WL 1656891, at *4.  The affidavit does not explain how long the medical problem is likely to last or why it would prevent Rault from making the relatively short trip from Lafayette, Louisiana to Houston, Texas, which does not require air travel.  There has been no showing that Rault's medical condition is as severe as those in *Murphy*, *Walker*, or even *Pratt*, or that the condition would persist to the time of trial.

Based on the current record, the defendants have failed to show that the forum-selection clause is unreasonable.

**IV.     Conclusion**

The defendants' motion to dismiss is denied.

SIGNED on March 31, 2008, at Houston, Texas.

Lee H. Rosenthal
United States District Judge