IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RIMKUS CONSULTING GROUP, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-07-1494 |
| | § | |
| RAULT RESOURCES, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Rimkus Consulting Group, Inc. ("Rimkus") sued its client, Rault Resources, Inc. ("Rault Resources") and Joseph M. Rault, in state court in Harris County, Texas, alleging breach of contract. The defendants timely removed. (Docket Entry No. 1). Rimkus has filed a motion for summary judgment, (Docket Entry No. 32), to which the defendants have responded. (Docket Entry No. 36).[1] Based on the pleadings, the motion and response, the record, and the applicable law, this court denies Rimkus's motion for summary judgment. The reasons for this ruling are explained below.

**I.     Background**

Rimkus is a Texas corporation that provides forensic consulting services. Rault Resources is a New Mexico corporation that owns and manages real estate in Louisiana. Joseph Rault is the president of Rault Resources.

---

[1] This court previously denied the defendants' motion to dismiss Rimkus's complaint for lack of personal jurisdiction. (Docket Entry No. 30). This court also denied the defendants' motion to extend the deadlines in this suit by 120 days. (Docket Entry No. 38).

In September and October 2005, Rault and Rault Resources hired Rimkus to perform five separate property-damage evaluations on properties Rault Resources owned in Louisiana. The jobs included an evaluation of damage from a lightning strike, three hurricane storm-damage evaluations, and an evaluation of moisture intrusion. The three hurricane storm-damage evaluations and the moisture-intrusion evaluation are the subject of this suit.

For each evaluation, a Rault Resources employee in Louisiana contacted Rimkus in Louisiana to discuss the work to be performed. Rimkus subsequently sent Rault Resources a "Confirmation of Assignment" letter with terms and conditions. Three of the letters were addressed to Rault in Louisiana and stated that the project manager was Nick G. Cammarata. The fourth letter was addressed to Marti Frye, a Rault employee, in Louisiana and stated that the project manager was Joe D. Hughes. Each of the four letters was substantially similar and stated as follows:

> Dear Mr. Rault:
>
> Thank you for selecting Rimkus Consulting Group, Inc. for this assignment. We have commenced work on this project in accordance with your instructions. I will coordinate your file throughout the duration of the project, and the professional assigned to manage this project is Nick G. Cammarata, who is classified as a Regional Property Manager.
>
> Unless stated in writing otherwise, our services are limited to providing professional advice, judgments and/or opinions for the exclusive use of our client.

> Our terms for providing these services are described in the attached Terms and Conditions. The Professional Fees Schedule is effective through December 31, 2005. During the data gathering and analysis phase of this project, our composite hourly charge will be $175.00. Should this project extend to litigation, the rates for our services will be adjusted to those in the Professional Fees Schedule.
>
> . . .
>
> We will invoice you each month for services provided and expenses incurred during the preceding month. Invoices are due upon receipt. Interest on unpaid balances more than sixty days old will be charged at the rate of one percent per month.
>
> We appreciate the opportunity to work with you on this assignment and look forward to being of assistance on this and future projects.
>
> Sincerely
>
> RIMKUS CONSULTING GROUP, INC.
>
> Gary L. Bell
> Vice President, Central Region

(Docket Entry No. 8, Exs. A-1, A-2, A-3, A-4). The terms and conditions were the same for each evaluation. They stated that Rimkus "[would] proceed diligently with the assignment and [would] perform work in accordance with generally accepted professional practices in a timely manner." (Docket Entry No. 32, Ex. D-1).

Rimkus sent Rault Resources invoices for the work performed on the Rault Resources properties. In the motion to dismiss for lack of personal jurisdiction, the defendants initially argued that "[t]he only possible contract between the parties was oral." (Docket Entry No. 4 at 7). The defendants later conceded that "the engagement letters themselves contain the

essential terms of the agreement between the parties" and "form the contract between the parties in this case." (Docket Entry No. 15 at 3).  Rault Resources and Rault concede that they were both parties to the letter agreements with Rimkus. (Docket Entry No. 22 at 1–2).

Rimkus moves for summary judgment that Rault and Rault Resources are liable for the amounts invoiced on the basis of deemed admissions.  Alternatively, Rimkus argues that the other evidence in the record shows that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. (Docket Entry No. 32).

**II.    The Summary Judgment Standard**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "'An issue is material if its resolution could affect the outcome of the action.'" *DIRECTV, Inc. v.*

*Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (quoting *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003)). "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Quorum Health Res., L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. "[T]he nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citation omitted). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by 'only a 'scintilla' of evidence.'" *Little*, 37 F.3d at 1075 (internal citations omitted). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).

**III.    Analysis**

    **A.    The Requests for Admissions**

On November 19, 2007, Rimkus served requests for admissions on each of the defendants. (Docket Entry No. 32, Ex. A). On December 12, 2007, the defendants served

a blanket objection to Rimkus's discovery requests on the ground that this court had not yet ruled on the defendants' motion to dismiss for lack of personal jurisdiction and that "Defendants do not intend to waive personal jurisdiction in this case and therefore, will not respond to the requests propounded by Plaintiff until such time as the Court rules on Defendants' Motion to Dismiss." (*Id.*, Ex. B). On March 31, 2008, this court denied the defendants' motion to dismiss. (Docket Entry No. 30). On June 5, 2008, the defendants filed responses to Rimkus's requests for admissions. (Docket Entry No. 36, Ex. C).

Rule 36 of the Federal Rules of Civil Procedure governs requests for admissions, allowing a party to "serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the [general scope of discovery] relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents."[2] FED. R. CIV. P. 36(a). Rule 36 provides that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." FED. R. CIV. P. 36(a)(3). "The grounds for objecting to a request must be stated." FED. R. CIV. P. 36(a)(5). "The requesting party may move to determine the sufficiency of an . . . objection," and "[u]nless the court finds an objection justified, it must order that an answer be served." FED. R. CIV. P. 36(a)(6).

---

[2] The language of Rule 36 was amended on December 1, 2007. The changes were "intended to be stylistic only." *See* FED. R. CIV. P. 36 Committee Note (2007).

A party should not be penalized for standing on an invalid objection unless the requesting party moves for and obtains an order finding the objection invalid. "Once the party receiving the request for admissions objects, '[t]he next step is left to the party serving the requests. If he is satisfied that the objections are well taken, he may do nothing. If he wishes to challenge the sufficiency of the objections, . . . he may move for such a determination." *Texaco Puerto Rico, Inc. v. Medina*, 834 F.2d 242, 247 n.3 (1st Cir. 1987) (quoting 4A MOORE, LUCAS AND EPSTEIN, MOORE'S FEDERAL PRACTICE ¶ 36.06, at 66 (1987)); *accord Brown v. P.S. & Sons Painting, Inc.*, 680 F.2d 1111, 1114–1115 (5th Cir. 1982) (citations omitted) ("Given [the requesting party's] failure to seek further action by the court to determine the sufficiency of the objections, as thus framed, there was actually no admission."); *Gummow v. Splined Tools Corp.*, No. 3-03-CV-1428-L, 2005 WL 1356438, at *6 (N.D. Tex. June 7, 2005) (finding that it was "improper to penalize [the objecting party] for standing on her objections" because the requesting party failed to seek an order determining the sufficiency of the objections).

In denying the defendants' motion to extend the deadlines in this suit by 120 days, this court rejected the defendants' argument that participating in discovery before their motion to dismiss was decided would have waived their jurisdictional objection. (Docket Entry No. 38). This is the same argument that formed the basis of the defendants' objection to the requests for admissions. However, Rimkus did not seek an order determining the sufficiency of the objection, and this court did not issue the order rejecting the defendants' waiver

7

argument until June 30, 2008, after the defendants filed substantive answers and additional objections to Rimkus's requests for admissions. Rimkus's requests for admissions are not deemed admitted.

### B. The Record Evidence

Rimkus asserts that the defendants breached the contracts between the parties by failing to pay for the property-damage evaluations. The defendants do not dispute that they failed to make payments for the four property-damage evaluations at issue in this suit, but assert that they do not owe the full amount billed because Rimkus's work "was of poor quality and incomplete, and the invoices issued unreasonable, excessive and thus objectionable." (Docket Entry No. 36 at 4).

The terms and conditions incorporated into the engagement-letter contracts between the parties specified that Texas law applies. Under Texas law, the elements of a breach of contract claim are the existence of a valid contract, the plaintiff's performance or tendered performance, the defendant's breach of the contract, and damages resulting from the breach. *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769 (Tex. App.–Dallas 2005, pet. denied); *Roof Sys., Inc. v. Johns Manville Corp.*, 130 S.W.3d 430, 442 (Tex. App.–Houston [14th Dist.] 2004, no pet.).

Rimkus has submitted an affidavit by one of its executives, Ralph S. Graham, with the invoices at issue, as evidence that it provided the services called for by its contracts with the defendants and that the defendants failed to pay. (Docket Entry No. 32, Ex. D). Graham

8

stated in his affidavit that the defendants requested Rimkus's services, agreed to pay customary and reasonable rates, failed to pay for the services provided, and "never expressed a problem with the services provided by Rimkus prior to the lawsuit being filed." (*Id.*).

Rault and Rault Resources respond that the Rimkus invoices contained "an unreasonable number of hours for the work actually requested, an excessive amount of travel time, and charges for work which was not performed." (Docket Entry No. 36 at 8). Rault and Rault Resources assert that "there is no foundation laid to demonstrate Mr. Graham's knowledge of the defendants, any of their properties, the work scope requested, the services actually performed, the deficiencies in the work, or really anything specific to this project." (*Id.* at 7). Rault and Rault Resources dispute Graham's assertion that they "never expressed a problem with the services provided by Rimkus prior to the lawsuit being filed." (*Id.*). Rault and Rault Resources submitted an affidavit by Greer Roberts, a Rault Resources manager responsible for two of the Louisiana properties that Rimkus was hired to evaluate, one at 110 Veterans Memorial Boulevard and the other at 2400 Veterans Memorial Boulevard. Roberts stated that he was "familiar with the services requested of Rimkus, and the services actually performed by Rimkus" at the two properties. Roberts reviewed the invoices and the "sign in/sign out" records showing who was on the premises and when they were there. (*Id.*, Ex. F at 2). Roberts stated:

> The Rimkus invoices raised numerous questions, and those questions were made to [Rimkus representatives]. Additionally, reports which were requested, were never actually completed and submitted by Rimkus. The time charged by Rimkus did not appear accurate and, in some cases, excessive. As the result

9

> of these many discrepancies, Rault Resources offered to simply pay Rimkus 75% of the total amount invoiced, to which [a Rimkus representative] responded that discounting the amount invoiced would impact his profit margin (or words to that effect).

(Docket Entry No. 36, Ex. F at 2–3).

Rault also submitted an affidavit. He asserted that there were numerous deficiencies in Rimkus's work. (Docket Entry No. 36, Ex. G). The problems included that "[t]he fees charged were excessive, as were the hours invoiced. Rimkus appeared to submit bills for work which it did not actually perform, based on timesheets maintained at the buildings and based on the nature of the work undertaken." (*Id.*, Ex. G at 2). Rault stated that "Rimkus would not approve the re-opening of the [2400 Veterans Memorial Boulevard] building, yet its reasons for not doing so were unclear. It brought in new engineers, for which it billed additional time. A final report setting forth the reasons for its actions, was never prepared nor submitted. In the end, its work remained incomplete." (*Id.*). Rault stated that "at the 110 Vets building, an asbestos issue came up while repairs were bing made. Due to the unresponsiveness of Rimkus, Rault Resources was required to retain a new consultant/contractor to address the issue." (*Id.*). With respect to the work performed at the defendants' property at 611 Northline in Metaire, Louisiana, Rault stated that a draft report read to him over the phone "was contradictory and nonsensical, and [a Rimkus representative] told me that he agreed with my observations. . . . A report, whether in draft or in final form, was never submitted to me." Rimkus billed Rault Resources and Rault for this work. (*Id.*). Rault stated that "[w]hile repairs were underway, Rimkus authorized a

10

change by the general contractor in accounting methodology from a 'cost plus' to a 'line item plus general conditions' approach. This change in accounting methodology severely impacted Rault Resources' ability to proceed with and complete repairs timely and economically. Eventually a new firm was retained to undertake an audit of the repair work and attempt to untangle the aforesaid change in methodology. This resulted in excess, and duplication of charges." (*Id.*, Ex. G at 2–3). Rault stated that "Rimkus appeared to lose interest in this project. Its work remained incomplete." (*Id.*, Ex. G at 3).

The terms and conditions incorporated into the contracts required Rimkus to "proceed diligently with the assignment and perform work in accordance with generally accepted professional practices in a timely manner." (Docket Entry No. 32, Ex. D-1). Rault and Rault Resources have raised disputed fact issues material to determining whether Rimkus performed the services required under the contracts and is entitled to the full amounts in the invoices. There is competent summary judgment evidence that Rimkus did not perform all the work claimed in the invoices, that some of the work was not timely, and that some of the work was of poor quality and not in accordance with generally accepted professional practices. These fact issues preclude summary judgment.

## IV.     Conclusion

Rimkus's motion for summary judgment is denied.  Docket call will not proceed on August 8 as scheduled, but is reset to August 18, 2008, at 4:30 p.m.  A trial date will be set at docket call.

SIGNED on July 28, 2008, at Houston, Texas.

_____
                Lee H. Rosenthal
            United States District Judge